**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| **GENESIS HEALTHCARE,** | ) | |
| | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. N13A-11-007 MJB** |
| | ) | |
| | ) | |
| **DELAWARE HEALTH** | ) | |
| **RESOURCES BOARD** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Appellee.** | ) | |

**Submitted:** December 3, 2014
**Decided:** March 31, 2015

*Upon Appellant's Appeal from the Delaware Health Resources Board,* **AFFIRMED.**

**OPINION**

Thomas P. McGonigle, Lindsay B. Orr, Drinker Biddle & Reath, LLP, 222 Delaware Avenue, Suite 1410, Wilmington, Delaware, 19801, *Attorneys for Appellant.*

Rae Meredith Mims, Deputy Attorney General, Delaware Department of Justice, 102 W. Water Street, Dover, Delaware, 19904, *Attorney for Appellee.*

**BRADY, J.**

# I. INTRODUCTION

This action is an appeal of a decision made by the Delaware Health Resources Board to approve the construction of a new skilled care facility, the Center at Eden Hill ("Eden Hill"). Appellant Genesis Healthcare ("Genesis") is an operator of skilled nursing facilities with which the proposed facility may compete. Because Genesis' interests may be adversely affected by the new facility, Genesis is an interested party and is permitted to appeal the approval to Superior Court.[1]

Genesis argues that the Health Resources Board committed reversible error in approving Eden Hill's application. Genesis contends that the Board misunderstood and misapplied the statutory framework that the Board is obligated to use in evaluating such proposals. Specifically, Genesis argues that (a) the Board failed to recognize that meeting the "bed need" criterion is a necessary prerequisite to any approval; (b) the Board's decision was not in keeping with its statutory obligation to protect the interests of the medically indigent; and (c) the Board did not properly consider the financial feasibility of the project. Genesis also argues that the Board's failure to follow the proper procedure is tantamount to the Board's impermissibly rewriting the rules of review without following the strict procedural guidelines for revising those rules.

The Court finds that the Board did not misinterpret or misapply the statutory or regulatory guidelines. The Board's decision is supported by substantial evidence and is free from legal error. For these reasons, this Court **AFFIRMS** the decision of the Delaware Health Resources Board.

---

[1] *Broadmeadow Inv., LLC v. Delaware Health Resources Bd.*, 56 A.3d 1057, 1062 (Del. 2012) (holding that appellant "is 'aggrieved' by the decision of the Board to grant a CPR to [competitor] in the same geographic region that [appellant] already serves").

## II. FACTS

### A. The Delaware Health Resources Board and the Certificate of Public Review Process

Under 16 *Del. C.* §9301 *et seq.*, certain proposed changes to the state's medical facilities must first be approved by the Delaware Health Resources Board (the "Board"). The purpose of this supervision is "to assure that there is continuing public scrutiny of certain health care developments which could negatively affect the quality of health care or threaten the ability of health care facilities to provide services to the medically indigent."[2] The premise is that the construction of new healthcare facilities or fundamental changes to existing healthcare facilities is a matter of state and public concern. The primary mechanism of oversight provided by the statute is the requirement that certain healthcare related projects receive a Certificate of Public Review ("CPR") from the Board before they can proceed.[3] Among the projects requiring a CPR is the construction of a healthcare facility, which includes skilled nursing facilities ("nursing homes").[4] During the review period, any person may request a public hearing.[5] After an approval, any person may "for good cause shown" request that the Board reconsider the approval.[6]

There are two primary sources of guidance for the Board in making the determination whether to issue a CPR. The first source is the statute itself, 16 *Del. C.* §9306, which itemizes seven factors for consideration. As the interpretation of the statute is at issue in the instant case, it is helpful to consider its precise language. Specifically, 16 *Del. C.* §9306, entitled "Review Considerations," reads:

---

[2] 16 *Del. C.* §9301.
[3] 16 *Del. C.* §9304.
[4] 16 *Del. C.* §9304.
[5] 16 *Del. C.* §9305(6).
[6] 16 *Del. C.* §9305(7).

In conducting reviews under this chapter, the Board shall consider as appropriate at least the following:

(1) The relationship of the proposal to the Health Resources Management Plan adopted pursuant to §9303 of this title. Prior to adoption of a Health Resources Management Plan by the Board, the State health plan last in use by the Health Resources Management Council shall comprise such plan;

(2) The need of the population for the proposed project;

(3) The availability of less costly and/or more effective alternatives to the proposal, including alternatives involving the use of resources located outside the State;

(4) The relationship of the proposal to the existing health care delivery system;

(5) The immediate and long-term viability of the proposal in terms of the applicant's access to financial, management and other necessary resources;

(6) The anticipated effect of the proposal on the costs of and charges for health care; and

(7) The anticipated effect of the proposal on the quality of health care.[7]

The second source of guidance for the review process is provided by the Health Resources Development Plan ("HRD Plan"), which is referenced in the first statutory factor.[8] The HRD Plan is a document that is developed by the Board and may only be revised in compliance with strict procedural rules, including a public hearing, approval by the Delaware Health Care

_____

[7] 16 *Del. C.* §9306
[8] 16 *Del. C.* §9303(d)(1).

Commission, and approval by the Secretary of the Department of Health and Social Services.[9] Relevant to the instant case, the HRD Plan includes a section entitled "Nursing Home Bed Needs."[10] The HRD Plan states, "Consistency with the projected bed needs derived from Guideline 1 [provided later in the section] shall serve as a 'threshold' to be met in order for a Certificate of Public Review to be granted for additional nursing home beds. When this 'threshold' is met, the favorable attributes set forth in Guideline 3[11] [provided later in the section] shall also be considered."[12] The section sets forth a method for calculating bed need projections for future years based on the current state population and projected population change.[13]

### B. Eden Hill's Application of CPR Review

On January 25, 2013, the Center at Eden Hill, LLC ("Eden Hill") submitted a CPR application for a new 80-100 bed skilled nursing facility in Kent County, Delaware. Eden Hill's proposed facility would focus on short-term physical rehabilitation and medical services to patients recovering from a recent illness or injury. The anticipated average length of stay for these patients would be 21 days.

The Board convened a Review Committee of three Board members to study the application and make a recommendation to the full Board. The members of the Review Committee were William Love, the Chair of the Committee ("Love"), Lynn Fahey ("Fahey"), and David Hollen ("Hollen"). On February 27, 2013, the Board deemed the application

---

[9] 16 *Del. C.* §9303(d)(1). The current HRD Plan is provided in the appendices to both Genesis' Opening Brief and the Board's Answering Brief. For convenience, the Court will cite to the document provided by Genesis as "HRD Plan at A__," using the pagination in Genesis' Appendix.

[10] HRD Plan at A23.

[11] "Guideline 3" appears to have been a typographical error. The section does not include a "Guideline 3." However, there is a "Guideline 2," which is entitled, "Favorable Attributes."

[12] HRD Plan at A23.

[13] HRD Plan at A23.

complete and, as per statute, sent notice to all healthcare facilities in the state and published notice in two newspapers of general circulation.[14] A public hearing was held on May 3, 2013.[15] At the hearing, representatives from Eden Hill made a presentation and provided handouts. Representatives of Genesis Healthcare also testified at the hearing and submitted a document summarizing Genesis' position to the Board.[16] On May 30, 2013, the Review Committee held a meeting at which representatives from Genesis Healthcare were also present. The Review Committee asked for additional information from Eden Hill.

Even though the comment period for the public hearing ended on May 6, 2014, the Board continued to accept correspondence from Genesis Healthcare. On June 27, 2013, the Board received a written request from Genesis, asking it to carefully consider Eden Hill's CPR application and seek additional input. The Review Committee met on June 27, 2013 and voted to extend the review period. During the meeting, the Review Committee discussed, among other things, concerns about the methodology for calculating the bed need projections. Specifically, Chairman Love expressed his concern that the calculation methodology currently used by the Board might be "dated,"[17] and that new beds might not really be needed based on a shift away from institution-based care and towards home-based alternatives.[18] The Committee also acknowledged that the calculation does not distinguish between short-term care beds and long-term care beds.[19]

---

[14] 16 *Del. C.* §9305(4).
[15] The relevant meetings are as follows: a public hearing (May 3, 2013); five Review Committee Meetings (May 3, 2013; May 30, 2013; June 27, 2013; July 30, 2013; and August 22, 2013); and three Health Resources Board Meetings (August 22, 2013; October 24, 2013; and November 19, 2013).
[16] Genesis' Notes on Eden Hill's Application (dated May 3, 2013), Appendix to Board's Answering Brief, B295-6.
[17] Transcript of July 27, 2013 Review Committee Meeting at 55.
[18] Transcript of July 27, 2013 Review Committee Meeting at 50.
[19] Transcript of July 27, 2013 Review Committee Meeting at 53.

On July 30, 2013, the Review Committee met again to review a draft report and determined that it would make a recommendation to the full Board at the upcoming August 22, 2013 meeting of the full Board. The Review Committee also scheduled a final meeting just prior to the meeting of the full Board to review the final draft of the report and vote on the recommendation. On August 14, 2013, Genesis Healthcare sent a second written request to the Board asking that Eden Hill's CPR application be denied.

At the August 22, 2013 meeting of the Review Committee (prior to the full Board meeting), the Review Committee conducted its final review of Eden Hill's application. The Committee reviewed each of the seven statutory criteria set forth in 16 *Del. C.* §9306. Chairman Love said that the Review Committee had taken a vote on whether or not Eden Hill's proposal met each of the seven criteria.[20] The Committee determined that, based on new bed need projections adopted by the Board, the Eden Hill proposal did not meet the first criterion (i.e., the proposal did not meet the guidelines in the current HRD Plan).[21] The Review Committee also determined that the proposal did not meet the second statutory criterion (i.e., the proposal was not in keeping with the need of the population for the proposed project).[22] The Committee's finding on both the first criterion and the second criterion appear to have been based on the updated bed need projections, which indicated a surplus of nursing home beds in Kent County.[23]

The Committee found that the proposal met the remaining five statutory criteria (criteria 3-7).[24] The Review Committee members appear to have been in agreement that there is no

---

[20] Transcript of August 22, 2013 Review Committee Meeting at 5.
[21] Transcript of August 22, 2013 Review Committee Meeting at 6.
[22] Transcript of August 22, 2013 Review Committee Meeting at 7.
[23] Transcript of August 22, 2013 Review Committee Meeting at 7.
[24] Transcript of August 22, 2013 Review Committee Meeting at 11.

mandated method to weigh the statutory criteria against one another.[25] In light of these findings, the Committee voted to recommend approval to the Board with the following conditions: (1) Eden Hill must obtain Medicaid and Medicare certification prior to accepting patients; (2) Eden Hill must use Delaware Resources where possible for construction and operation of the facility; and (3) Eden Hill must provide a minimum of $7 million in equity capital to help finance the development and construction of the facility.[26]

During the full meeting of the Board, also on August 22, 2013, the Review Committee made its recommendation that Eden Hill be issued a CPR with the aforementioned conditions attached. The Board voted to approve the application with these conditions. On September 13, 2013, the Board sent a letter to Eden Hill informing it that the CPR had been granted. On September 23, 2013, Genesis filed a Motion for Reconsideration of the Board's decision to grant the CPR to Eden Hill. The Board considered Genesis' Motion at its October 24, 2013 meeting and denied the Motion. The Board notified Genesis in writing of the denial on November 7, 2013. On November 19, 2013, at a meeting to discuss a separate application from another nursing facility, the Board heard testimony from Mary Peterson ("Peterson"), the Director of the Division of Long Term Care Residents Protection.[27] Peterson expressed her opinion that Eden Hill would be unlikely to secure Medicaid or Medicare certification.[28]

---

[25] Transcript of August 22, 2013 Review Committee Meeting at 13. This position was explicitly articulated by Ms. Fahey, and it was not disputed by the other Review Committee members. Ms. Fahey said, "My thoughts are there are seven criteria, and [Eden Hill's proposal] meet[s] five out of the seven. And as far as I know from the [HRD] Plan, there is no way to weight which criteria [*sic*] is the most important versus the others."

[26] Transcript of August 22, 2013 Review Committee Meeting at 23-25.

[27] The Division of Long Term Care Residents Protection is the state agency responsible for certifying nursing facilities for Medicaid or Medicare reimbursement.

[28] Transcript of November 19, 2013 Board Meeting, at 53.

**C. The Instant Appeal**

Genesis filed the instant Appeal in Superior Court on November 25, 2013. Genesis' Opening Brief was filed on February 10, 2014. Genesis argues that the Board committed legal error and abused its discretion in granting Eden Hill's CPR application and denying Genesis' Motion for Reconsideration. The Board filed an Answering Brief on March 5, 2014, and Genesis filed a Reply Brief on March 14, 2014. The matter was assigned to Judge Brady on April 16, 2014. The record in the case was received on July 9, 2014.

On October 29, 2014, the Court asked counsel to submit supplemental briefing in order to clarify the relationship between the HRD Plan and the statute. Supplemental briefing from both parties was submitted on December 3, 2014, and the Court took the matter under consideration.

*i. The Bed Need Issue*

Genesis' primary argument centers on the bed need guidelines in the HRD Plan. The guidelines concerning nursing home beds state that "[c]onsistency with the projected bed needs… shall serve as a 'threshold' to be met in order for a Certificate of Public Review to be granted for additional nursing home beds."[29] It is undisputed that the Review Committee found that the proposal did not meet the bed need condition, and that the Board accepted this conclusion.

Genesis argues that the bed need provision is a requirement that must be met in order for the Board to issue a CPR and that the Board committed a mistake of law in granting Eden Hill's CPR when the bed need provision was not met. Genesis argues that the language of the provision, which refers to bed need as a "threshold" means that it is a precondition without

---

[29] HRD Plan at A23.

9

which a CPR cannot be granted regardless of whether the other statutory criteria are met. Thus, Genesis argues that the Board went against the "plain meaning" of the HRD Plan provision.

Genesis argues that the Board's failure to follow "the clear mandate of the [HRD] Plan that consistency with bed need must serve as a threshold to the granting of a CPR application constitutes a de facto modification of the [HRD] Plan and an abuse of discretion."[30] Genesis further argues that, after the Eden Hill decision had been issued, the Board subsequently recognized its mistake in assuming that the bed need factor was not mandatory.[31] Genesis cites a statement by Bettina Riveros ("Riveros"), an attorney and member of the Board, who said that the HRD Plan "does have this threshold requirement."[32] Genesis also suggests that the Board's recognition of its mistake was behind its decision to reject the next Kent Country application for 30 additional nursing home beds by another corporation (Capital Nursing and Rehabilitation, LLC).

Genesis points out that there is a rigorous process, mandated by 16 *Del. C.* §9303(d)(1), that must be followed in order to modify the HRD Plan. Genesis argues that the Board's erroneous "interpretation" of the HRD Plan is tantamount to the Board's rewriting of the HRD Plan rules without following the process mandated under 16 *Del. C.* §9303(d)(1). Genesis points out that "an administrative board may not rewrite its rule 'in the guise of exercising its interpretive powers over the Rules.'"[33]

---

[30] Genesis' Opening Brief at 21.
[31] Genesis' Opening Brief at 19.
[32] Transcript of October 24, 2013 Board Meeting at 6.
[33] Genesis' Opening Brief at 21 (*quoting Division of Social Services of Dept. of Health and Social Services v. Burns*, 438 A.2d 1227, 1229 (Del. 1981)).

10

### ii. Alleged Negative Effects on the Medically Indigent

Genesis' second argument is that the Board violated its statutory duty, under 16 *Del. C.* §9303(d)(2), to "assur[e] that health care developments do not negatively affect the quality of health care or threaten the ability of health care facilities to provide services to the medically indigent." Genesis argues that opening new nursing facilities in the absence of need destabilizes existing facilities that care for the medically indigent.

The proposed Eden Hill facility would serve primarily short-term rehabilitation patients. The bills for these patients would be primarily paid by Medicare.[34] In contrast, other facilities, such as the Silver Lake Center in Dover, serve a large number of medically indigent long-term patients, whose bills are paid by Medicaid. Medicaid reimburses for care at a lower rate than Medicare, making the Medicaid patients less profitable. Genesis suggests that the Eden Hill facility would draw Medicare patients away from facilities like Silver Lake. Genesis argues that the loss of these higher profit margin patients would force facilities like Silver Lake "to dramatically reduce their workforce and ultimately… likely close their doors."[35] In other words, Genesis argues that facilities like Silver Lake rely on income from higher-margin Medicare patients to subsidize services for medically indigent patients who rely on Medicaid. It is Genesis' position that the Eden Hill facility will draw the Medicare patients away, destabilizing the facilities that care for the medically indigent.

### iii. The Financial Viability Issue

Genesis' third argument is that the Board erred in approving Eden Hill's proposal in the absence of substantial evidence that the project is financially viable. The fifth criterion under 16

---

[34] Eden Hill's CPR Response Form, including in Appendix to Genesis' Opening Brief, at A76.
[35] Genesis' Opening Brief at 22.

*Del C.* §9306 states that the Board is to consider "[t]he immediate and long-term viability of the proposal in terms of the applicant's access to financial, management and other necessary resources."[36] Genesis argues that there is good evidence that the Eden Hill project is not financially viable. The reason cited by Genesis is that Eden Hill intends that the majority of its revenue will come from Medicare patients, but there is evidence that Eden Hill will not be able to get Medicare certification.[37] In support, Genesis cites the November 19, 2013 testimony of Mary Peterson. When asked specifically about Eden Hill, Peterson stated, "[i]f they are going to depend on Medicare or Medicaid reimbursement in order to run their business, I am not going to be able to provide that for them at this time."[38] Peterson explained that facilities are ranked in "tiers" according to their Medicare/Medicaid approval priority level and that the Eden Hill facility would be a "tier 3" facility. Peterson testified that her division "has not met its tier 1 priorities for at least the last four years. So since we can't even meet our tier 1 priorities, there is no way that [we will be able] to deal with tier 3 priority."[39]

### III. SUPPLEMENTAL BRIEFING

On October 29, 2014, the Court asked counsel to submit simultaneous supplemental briefing in order to clarify three issues concerning the relationship between Health Resources Development Plan and the statute: (1) whether a finding of bed need is a threshold that must be met before the other factors in 16 *Del. C.* §9306 can be considered; (2) the specific legal relationship between the Plan and the statute, and which takes priority in enforcement; and (3) assuming, for the sake of argument, that the Board failed to follow the protocols in the Plan, whether the Board violated 16 *Del. C.* §9306 by failing to properly consider whether the

---

[36] 16 *Del C.* §9306(5).
[37] Genesis' Opening Brief at 24.
[38] Transcript of November 19, 2013 Board Meeting at 47.
[39] Transcript of November 19, 2013 Board Meeting at 47.

proposal was aligned with the Plan.[40] Appellant and Appellee both submitted timely supplemental briefs.

In its supplemental brief, Appellant Genesis asserts that bed need is a threshold that must be met before the Board may consider the other statutory factors.[41] Genesis argues that administrative regulations, such as the Plan, have the "force of law" once adopted so long as they are not inconsistent with the legislation that authorizes the administrative agency to promulgate the regulations.[42] While Genesis does not dispute that the statute takes priority over the administrative regulation where the two are inconsistent, Genesis maintains that the statute and the regulation are not inconsistent in the instant case.[43] Genesis argues that because the regulations in the Plan have the force of law, violation of these rules is tantamount to violation of the statute.[44]

In its supplemental brief, the Board asserts that "the Board's enabling statute necessarily trumps the Board's Plan" where the two are inconsistent.[45] However, unlike Genesis, the Board argues that there is an inconsistency between the statute and the Plan's rule that "bed need shall serve as a 'threshold' to be met in order for a Certificate of Public Review to be granted for additional nursing home beds."[46] The Board says that the language of the statute indicates that the seven criteria are to be considered holistically; however, if bed need is taken to be a necessary threshold, then the other six statutory criteria would be rendered irrelevant.[47] According to the Board, if the legislature had intended compliance with the Plan to be mandated,

---

[40] Letter dated October 29, 2014 at 1.
[41] Genesis' Supplemental Brief at 4.
[42] Genesis' Supplemental Brief at 2.
[43] Genesis' Supplemental Brief at 4.
[44] Genesis' Supplemental Brief at 6.
[45] Board's Supplemental Brief at 3.
[46] HRD Plan at A23.
[47] Board's Supplemental Brief at 5.

this would have been made clear in the statute: the first factor (compliance with the Plan) would have been itself described as a "threshold" that must be met to trigger review of the additional six factors.[48]

## IV. LEGAL STANDARD

The Delaware Supreme Court has held that an adversely affected healthcare provider may appeal the grant of a CPR to a competitor in Superior Court.[49] However, the standard under which a court reviews a decision of an administrative board is very deferential.[50] The board's decision is only to be disturbed in very limited circumstances.[51] So long as the board's conclusions are (a) supported by "substantial evidence"[52] in the record and are (b) "free from legal error,"[53] the board's decision must stand—even if the court itself would have decided otherwise.[54] Under 29 *Del. C.* § 10142(d), the court's review is limited to matters of law, and the court is bound by the facts presented before the administrative board in the instant matter.[55] The board's decision will be overturned only if the board "acts arbitrarily or capriciously" or "exceeds the bounds of reason."[56]

---

[48] Board's Supplemental Brief at 5.
[49] *Broadmeadow Inv., LLC v. Delaware Health Resources Bd.*, 56 A.3d 1057, 1062 (Del. 2012) (holding that appellant "is 'aggrieved' by the decision of the Board to grant a CPR to [competitor] in the same geographic region that [appellant] already serves").
[50] 29 *Del. C.* § 10142.
[51] *Delaware Transit Corp. v. Roane*, 2011 WL 3793450, *6 (Del. Super. Ct. Aug. 24, 2011).
[52] *See Unemployment Ins. Appeal Bd. v. Duncan*, 337 A.2d 308, 309 (Del. 1975).
[53] *See Longobardi v. Unemploymt. Ins. Appeal Bd.*, 287 A.2d 690, 692 (Del. Super. Ct. 1971), *aff'd*, 293 A.2d 295 (Del. 1972).
[54] *Delaware Transit Corp.*, 2011 WL 3793450 at *6.
[55] *See, e.g., Tenneco Oil Co. v. Department of Energy*, 475 F. Supp 299, 307 (D. Del. 1979).
[56] *Delaware Transit Corp.*, 2011 WL 3793450 at *6 (citing *Straley v. Advanced Staffing, Inc.*, 2009 WL 1228572, *2 (Del. Super. Ct. Apr. 30, 2009)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[57] Substantial evidence requires "more than a scintilla but less than a preponderance."[58] The court does not weigh evidence, determine questions of credibility, or make its own factual findings.[59] The court's role is merely to determine if the evidence is legally adequate to support the agency's factual findings.[60]

## V. DISCUSSION

### A. Materials outside the Record will not be Considered

The Board granted Eden Hill's CPR on August 22, 2013 and sent notice of the approval on September 13, 2013. Genesis relies on two pieces of evidence that were not part of the record on which the Board based its decision to approve Eden Hill's CPR application: the testimony of Mary Peterson at the November 19, 2013 Board meeting; and the Board's decision (subsequent to the Eden Hill decision) to deny another party's CPR application for additional nursing home beds.

It is undisputed that both of these events happened after the Eden Hill decision was issued by the Board. As the Board correctly points out in its Answering Brief, the Court's review is limited to the record that was before the Board in the instant matter.[61] The only evidence cited by Genesis to support its claim that the Eden Hill project is not financially viable is Mary Peterson's testimony. However, as Peterson's testimony was presented subsequent to the Board's decision in the Eden Hill project, the Court will not consider this testimony in the

---

[57] *MBNA America Bank, N.A. v. Capella*, 2003 WL 1880127, *2 (Del. Super. Ct.) (citing *Oceanport Ind. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. 1994)).
[58] *Id.* at *2 (quoting *Onley v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).
[59] *Id.* at *2 (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. Super. Ct. 1986).
[60] *Keim v. Greenhurst Farms*, 2001 WL 1490060, *2 (Del. Super. Ct. Nov. 19, 2001) (citing 19 *Del. C.* § 3323(a)).
[61] *Tenneco Oil Co.,* 475 F. Supp at 307.

15

instant appeal. Similarly, the fact that the Board denied another nursing home CPR application after approving Eden Hill's application cannot be considered by the Court.

## B. The Board did not Commit Legal Error in Interpreting the Statute

Based on the review of the evidence in the record, the Court finds that the Board did not commit legal error or abuse its discretion in interpreting the statute and applying it to the instant case. The Court finds the Board's decision to be supported by substantial evidence and free from legal error, and, therefore, the Board's decision is **AFFIRMED**.[62]

### i. The Bed Need Issue

Genesis argues that the Board committed legal error in failing to recognize that bed need is a mandatory prerequisite for granting a CPR regardless of whether the other statutory factors in 16 *Del. C.* §9306 are met. The Court finds that Genesis' interpretation is incorrect and that the statute permits approval of a CPR application even if the bed need provision in the HRD Plan is not met.

We look first to the language of 16 *Del. C.* §9306 itself. This section is entitled "Review Considerations," and states, "In conducting reviews under this chapter, the Board shall consider as appropriate at least the following…" The statute then gives the seven factors. Looking at the "plain meaning" of the statutory language, the statute says that these factors are considerations. The statute does not say an application must meet any or all of the factors in order to be approved.

---

[62] The Court does find it contradictory that the Board would approve a project for which the Board found no need, but the Court cannot simply replace the Board's judgment with its own.

Next, the Court considers the role of the HRD Plan. 16 *Del C.* §9303(d)(1) provides for the creation of the HRD Plan document by the Board. The statute provides that the Health Resources Board will have the duty to "[d]evelop a Health Resources Management Plan[,] which shall assess the supply of health care resources, particularly facilities and medical technologies, and the need for such resources. Essential aspects of the plan shall include a statement of principles to guide the allocation of resources, as well as rules and regulations which shall be formulated for use in reviewing Certificate of Public Review applications."[63] The first criterion in 16 *Del. C.* §9306 references the HRD Plan. The specific language of the criterion is as follows: "The relationship of the proposal to the Health Resources Management Plan adopted pursuant to §9303 of this title…" Read together with the opening sentence of §9306, the statute indicates that one of the factors to be considered in a CPR proposal review is whether the proposal is in conformity with the HRD Plan. The bed need provision in the HRD Plan and subsequent subsections, entitled "Guideline 1—Nursing Home Bed Projections" and "Guideline 2—Favorable Attributes," set forth calculation methods and identify favorable attributes.

Genesis argues that the bed need provision in the Plan indicates that bed need is a mandatory "threshold" that any CPR proposal must meet, and that failure to meet the bed need requirement alone defeats a CPR proposal. Even if the authors of the HRD Plan had intended this, the authors would be without authority to make such as rule. It is well settled that where an unambiguous statute and an administrative regulation conflict, the statute controls.[64] Making bed need a threshold that must be met before any of the other factors in 16 *Del. C.* §9306 may even be considered conflicts with the legislature's intent that "the Board shall consider as

---

[63] 16 *Del C.* §9303(d)(1).
[64] *Farm Family Ins. Co. v. Verizon Communications Inc.*, 2011 WL 531941, at *3 (Del. Super. Ct. Jan. 31, 2011).

appropriate *at least* the following [seven factors]."[65]  The HRD bed need "threshold" rule conflicts with the statute because failure to meet bed needs would mean that the other six criteria need not even be considered.  The HRD Plan cannot make compliance with bed needs a prerequisite to the consideration of *the other statutory factors.*[66]

### ii. Alleged Negative Effects on the Medically Indigent

16 *Del. C*. §9303(d)(2) provides that decisions of the Health Resources Board "shall reflect the importance of assuring that health care developments do not negatively affect the quality of health care or threaten the ability of health care facilities to provide services to the medically indigent." While the statute is clear that the effect on the medically indigent must be taken into account, the statute does not impose any specific requirements concerning the way in which the Board's decision must be sensitive to this concern.

Genesis argues that the Eden Hill facility may negatively impact the medically indigent by drawing higher profit-margin patients away from other facilities that rely on these profits to subsidize the care of the medically indigent.  However, Genesis itself admitted in its August 14, 2013 letter to the Review Committee that "[i]t is not clear what precise effect the Eden Hill proposal will have on the overall costs of health care."[67]

There is ample evidence that the Review Committee seriously considered the effect of the Eden Hill proposal on the medically indigent.  At the June 27, 2013 meeting, the Board decided to recommend imposing a condition requiring Eden Hill to maintain a minimum of 25% Medicaid population, which would still be below the estimated 50% Medicaid patients at most

---

[65] 16 *Del. C*. §9306 (*emphasis added*).
[66] If the legislative intent is that a need requirement be found by the Board before further consideration of other factors, the remedy is in the legislative process.
[67] Genesis' August 14, 2013 Letter, included in Appendix to Genesis' Opening Brief, at A5.

nursing facilities.[68]  On July 2, 2013, Eden Hill sent a letter dated stating that, "[t]he Center at Eden Hill could conceivably agree to *strive*, but not guarantee, to maintain a minimum Medicaid utilization level of 10 percent of gross revenue…" (emphasis in original).[69]

At the July 30, 2013 Review Committee meeting, the issue of a condition to ensure that Eden Hill would serve low income patients was raised again.[70]  At this meeting, the Committee went through several previously-discussed conditions and debated each of them.  When Chairman Love raised the condition that Eden Hill "maintain 25 percent of patients with Medicaid was a primary payer," Ms. Fahey responded as follows:

> This was something that I was kind of advocating for.  But I have actually been thinking a lot about it, and in the sense that [Eden Hill] focuses on the 21 days [i.e., short term patients with an average state of 21 days], that the expectation at that point is that it would all be Medicare covered or private insurance.  So to then say 25 percent needs to be Medicaid may be an unrealistic expectation.  I would prefer to ask for reports on the number of folks who stay past 29 days and how many of them are— that are— that would have been Medicaid are discharged to that effect.  Because them we'll have a sense of, of [*sic*] [whether they are] following through with the intent of their application.

To issue to which Ms. Fahey appears to be referring is the fact that Medicaid does not pay for nursing home services in the first thirty days.[71]  Since Eden Hill's stated focus is on short term

---

[68] Genesis' Opening Brief at 11 (*citing* Transcript of June 27, 2013 Review Committee Meeting at 12-14); Transcript of June 27, 2013 Review Committee Meeting at 22.
[69] Eden Hill's July 2, 2013 Letter, included in Appendix to Genesis' Opening Brief at A253.
[70] Transcript of July 30, 2013 Review Committee Meeting at 35.
[71] U.S. Department of Health and Human Services, "LongTermCare.gov: Find your path forward—Medicare", LONGTERMCARE.GOV, available at http://longtermcare.gov/medicare-medicaid-more/medicare/ (last visited Oct. 24, 2014).

care, Ms. Fahey appears to have been concerned that a mandate of a certain percentage of Medicaid patients would be unreasonable. Instead, Ms. Fahey suggests that a more reasonable measure by which to judge Eden Hill's commitment to the medically indigent would be by how many of the patients who stay over thirty days are Medicaid patients. The Review Committee appears to have determined that the nature of the Eden Hill facility, as focused on short term care, made it such that the facility will naturally have a much lower percentage of Medicaid patients. The Review Committee ultimately decided not to impose any condition dictating the minimum percentage of Medicaid patients and no such condition was imposed by the Board.[72]

## VI. CONCLUSION

The Court does not find that the Board acted in contravention of the statute in approving Eden Hill's application. While reasonable minds may differ as to the result, the Board clearly gave consideration to the statutory factors; and the decision was, ultimately, supported by substantial evidence[73] and free from legal error.[74] The decision of the Delaware Health Resources Board is **AFFIRMED**.

**IT IS SO ORDERED.**

_____/s/_____

**M. JANE BRADY**
Superior Court Judge

---

[72] Transcript of August 22, 2013 Review Committee Meeting at 24-25.
[73] *Duncan*, 337 A.2d at 309.
[74] *Longobardi* , 287 A.2d. at 692.