Austin P. OLNEY, Secretary of the Department of Natural Resources and Environmental Control, (Phillip Poms and Herbert Block, real parties in interest), Appellants,

v.

Edward W. COOCH, Jr., W. Allen Jones, W. W. Sezna, Albert E. Thompson, Appellees.

Supreme Court of Delaware.

Submitted Sept. 9, 1980.

Decided Jan. 19, 1981.

John Terence Jaywork (Argued) of Hudson, Jones & Jaywork, Dover, for appellants Phillip Poms and Herbert Block.

Eugene H. Bayard (Argued) of Wilson, Halbrook, Bayard, Bunting & Marshall, Georgetown, for appellees.

June D. MacArtor, Deputy Atty. Gen., amicus curiae, for appellant Austin P. Olney.

Before HERRMANN, C. J., DUFFY and HORSEY, JJ.

HORSEY, Justice:

The question determinative of this appeal is whether Superior Court properly cancelled a siting permit granted by the Department of Natural Resources and Environmental Control (the Department) for the erection of a residential structure on private oceanfront land east or seaward of the Department's building line under Department Regulations[1] adopted under Delaware's Beach Preservation Act, 7 *Del.C.*, Chapter 68.

Phillip Poms, equitable owner under a purchase contract from Herbert Block, of lot 18 in North Indian Beach, a substantially developed oceanfront subdivision located in Sussex County, appeals Superior Court's revocation of the Department's permit. The permit had authorized Poms to site his proposed house 12 feet or more seaward of the building line and within the immediate vicinity of the crest of the primary coastal dune on the oceanfront. There was an ex-

---

1. Section 1 of the Regulations defines the "building line" as meaning, "the approximate landward toe of the primary coastal dune, as determined by the [Department]."

isting house on the oceanfront lot immediately to the south of and in line with Poms' site; and Poms' lot was one of the few remaining vacant lots in North Indian Beach.

Application for the permit had been made under Department Regulation 4.02[2] because the building line intersected lot 18 so as to place 75% of its lot area seaward of the line and to leave inadequate remaining area landward of the line for construction. Poms' lot thereby qualified for a permit application under subparagraph 2 of § 4.02.

A siting permit was issued Poms after he had entered into an agreement with the Department, referred to as a dune maintenance agreement. However, the agreement pertained not only to maintenance of the dune during and after construction but also to the design and construction of the house.[3]

An administrative appeal was taken by certain nearby property owners to the Secretary of the Department who held a public hearing pursuant to Department regulations. At the hearing, experts called by protestants testified that Poms' proposed structure would necessarily disturb the coastal dune; that in time the proposed house would be left seaward of the dune which was gradually moving landward along with the beach front itself (due to a gradually rising sea level and continued beach erosion); and in several decades the lot would be under water. Thus, it was argued that any new construction in the vicinity of the present line of the coastal dune would expose existing neighboring structures landward thereof to damage from storm-driven debris, thereby violating one of the Act's stated purposes, the "protection of property owners behind [the] protective dunes."[4]

Upholding grant of the permit, the Secretary noted that under Regulation 4.02, issuance of a siting permit was "conditional upon existence or construction of adequate protection against the design storm."[5] The Secretary found the plans for the construction of the house to meet such conditions. As to protestants' testimony concerning the adverse long-term geological forces at work on the coastal shoreline, the Secretary concluded: that the primary dune would continue its western migration whether or not the dwelling was constructed; and that the conditions of the dune maintenance agreement reasonably assured both the dune's restoration and future maintenance and the ability of the structure to withstand the most severe storms. Thus, the Secretary affirmed issuance of the permit as both in accord with § 4.02 of the Regulations and consistent with the Regulations' underlying policy.

On protestants' appeal, Superior Court reversed. The basis for the Court's reversal was that the Secretary had abused his discretion in granting a permit that was not only against the "overwhelming" weight of the evidence but also violative of the Regulations' primary objectives.

## I

The standard for judicial review of a decision of an administrative body is well

2. Section 4.02 provides: "No person shall commence or conduct construction, reconstruction or alteration of the following without a siting permit therefore from the Department: a dwelling, commercial establishment or any other structure not covered in Section 4.01 that is proposed to be constructed seaward of the building line on parcels of land that, as of the effective date of these Regulations (July 26, 1973):

    1. were entirely seaward of the building line; or
    2. contained an area landward of the building line that was not adequate for construction, as determined by the Division.
Issuance of a permit under this Section will be conditional upon the existence or construction of adequate protection against the design storm, as determined by the Division, prior to the construction of the structure. Procedures for permit applications under this Section are in Section 7."

3. The agreement required the house to be erected at a specified elevation on pilings driven to specified depths.

4. Regulations' Statement of Policy (see pages 612 & 613 below)

5. The "design storm" is "a storm which produces a tide stage of 10 feet above sea level datum and has a calculated frequency of occurrence of once in 100 years." Regulations, § 1.

established. "Reversal is warranted if the administrative agency exercised its power arbitrarily or committed an error of law, or made findings of fact unsupportable by substantial evidence." *Kreshtool v. Delmarva Power and Light Co.*, Del.Super., 310 A.2d 649 (1973). Finding the Secretary's decision to be supported by substantial evidence and the law, we must reverse.[6]

### A.

■ The issue as to the law is narrow and muted in light of our ruling in *Atlantis I Condominium Assoc. v. Bryson*, Del.Supr., 403 A.2d 711 (1979). There, we upheld the Department's regulatory authority over the siting of residential structures on privately-owned beachland in Delaware. Protestants acknowledge the Department's authority to grant a siting permit to Poms; they defer to the Department's expertise over such matters; and they concede the presumption of regularity and validity of the Department's decisions. Protestants' argument is simply that the Secretary's findings in support of issuance of the permit were insufficient as a matter of law—for failure to reflect concern for the neighboring property owners and to provide assurances that they will be protected. Protestants refer to the policy statement within the Regulations and that portion thereof providing:

> These Regulations are promulgated primarily for the protection of property owners behind such protective dunes and for the prevention of destruction to property of persons intending to build on such dunes.

Protestants construe that statement to mean that the Department's "first duty" in a siting permit proceeding is to protect the property owners behind the coastal dunes and as entitling existing landward property owners to assurance of protection of their properties against loss or damage from the Secretary's actions. We cannot agree either with protestants' construction of the record or of the Regulations' objectives.

■ The record includes an agreement between the Department and the lot owner setting forth design requirements as to elevation of the structure on pilings to withstand storm damage. The record also includes testimony and findings by the Secretary that the construction plans provide for "adequate protection against the design storm." In our view, such findings satisfied Regulation 4.02 and thereby complied with the policy statement's concern for nearby property owners. The Regulations do not require more.

■ As we stated in *Atlantis, supra*, "the primary purpose of Section 4.02 is to insure that all new construction on the beach is capable of withstanding the inevitably damaging storms of the future [in the] requirement that the construction provide 'adequate protection against the design storm' ...." 403 A.2d at 716. Compliance with § 4.02 provides neighboring properties the protection called for under the policy statement. The Secretary committed no error of law.

### B.

■ The remaining issue concerns the sufficiency of the evidence to support the Secretary's decision approving a siting permit to Poms to locate his proposed residential structure, or a portion thereof, seaward of the Department's building line and on the coastal barrier dune. Protestants concede that the standard for judicial review of findings of an administrative agency is that a court will not substitute its judgment for that of an administrative body where there is substantial evidence to support the decision and subordinate findings of the agency. *In Re Artesian Water Company*, Del.Super., 189 A.2d 435 (1963); *Kreshtool v. Delmarva Power and Light Co., supra.* The Department is subject to the Delaware Administrative Procedures Act, 29 *Del.C.* § 6401, et

6. Since we reverse, we do not reach a further question raised by appellant that denial of a permit amounts to taking of property without just compensation in violation of constitutional rights.

seq., which codifies a like standard of judicial review, found in 29 *Del.C.* § 6442(d).[7]

■ The question then becomes whether the Secretary's decision and his subordinate findings were supported by substantial evidence. Substantial evidence has been defined to mean, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). Substantial evidence is "more than a scintilla but less than a preponderance..." *Cross v. Califano*, D.Fla., 475 F.Supp. 896, 898 (1979).

■ The record contains these findings by the Secretary: (1) that the primary or coastal dune would continue its westward migration whether or not Poms' application was granted; (2) that the proposed structure would degrade the strength of the dune unless rehabilitative measures were taken; and (3) that if the rehabilitative measures called for in the dune maintenance agreement were taken, the dune would be restored. Also previously noted was a finding that the construction plans for the structure would provide "adequate protection against the design storm."

Such findings complied with the mandate of § 8.03 of the Regulations that the Department consider "the effect of the proposed project on beach erosion, flooding and potential damage to the subject property and to other properties" and clearly supported the Secretary's conclusion that issuance of a permit was consistent with the Regulations' statement of policy and authorized under § 4.02.

In reversing the Secretary's action, the Court below applied an erroneous standard of review. Rather than determining the sufficiency of the evidence of record to support the administrative decision and deferring to the Department's expertise, as 29 *Del.C.* § 6442(d) provides, the Court independently determined whether a siting permit should issue and concluded that it should not. Finding the testimony of protestants' experts (referred to at page —— above) to be "overwhelming ... as to the inherent danger of such a permit", the Court rejected the Department's dune maintenance agreement with Poms as being of questionable value. The Court thereby improperly substituted its judgment for that of the Department and its Secretary. *See Oxon Hill Recreation Club, Inc. v. Water Resources Administration*, Md.App., 375 A.2d 567 (1977). Protestants' experts may prove to be entirely correct in their dire predictions that the present beachlands will be ultimately lost to the intruding sea and beach erosion. However, these concerns are not reflected in the Regulations or the accompanying policy statement which speak not of prohibition of further construction on the beachfront but of controlled development so as to "effectuate an equitable balance between utilization, conservation and protection of [the beachlands] consistent with sound coastal engineering principles."

This "balance" between conservation and utilization of the beachlands is apparent in the compromise struck under the Regulations as to new construction seaward of the Department's building line. The Forward to the Regulations states:

> Many comments were received that the Regulations prohibited building without offering an opportunity to present evidence that alternate protection from storm damage might be available, or provided, that would be equivalent or superior to that presently existing. In Section 4.02, this opportunity is provided for those lots that have no room to build landward of the building line. Regulations for lots containing sufficient area for building landward of the building line are in Section 3.01.

7. 29 *Del.C.* § 6442(d) provides:

"(d) The Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted. The court's review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency."

Under § 3.01, no structure may be erected seaward of the building line on any parcel of land which contains an adequate area for construction landward of the line. In contrast, under § 4.02, construction seaward of the building line may be allowed on parcels of land lacking adequate area landward of the line. Hence, the Regulations make clear beyond question that the Department was acting within its discretion in issuing a siting permit to Poms under § 4.02.

In *Atlantis, supra,* we noted that the Beach Preservation Act was "noticeably devoid of ... precise 'standards' to control administrative discretion" but concluded that the Legislature had intentionally delegated to the Department "the specifics of a coordinated beach management plan, ... [choosing] to defer to the expertise of the [Department] in that area." 403 A.2d 715. We conclude that the Court below erred in failing to follow that mandate.

REVERSED.