## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KENNETH ENGLISH,       )
      Claimant-Appellant,   )
       )
v.       )    **C.A. N15A-05-007 PRW**
       )
REED TRUCKING,       )
      Employer-Appellee.   )
       )

Submitted:  December 30, 2015
Decided:  March 24, 2016

*Upon Appeal from the Decision of the Industrial Accident Board.*
**AFFIRMED.**

## OPINION AND ORDER

Gary S. Nitsche, Esquire and Samuel D. Pratcher, Esquire, Weik, Nitsche, Dougherty & Galbraith, Wilmington, Delaware, Attorneys for Claimant-Appellant Kenneth English.

Joseph Andrews, Esquire, Hoffman Andrews Law Group, Dover, Delaware, Attorney for Employer-Appellee Reed Trucking.

**WALLACE, J.**

## I.     INTRODUCTION

Kenneth English appeals the April 27, 2015 decision from the Industrial Accident Board (the "Board") denying his Petition to Determine Additional Compensation Due.[1]  In its decision, the Board found that Mr. English sustained no more than five percent impairment of his right upper extremity.  Mr. English complains the Board's decision is not supported by substantial evidence because "the Board erred in finding that Claimant had an eight percent impairment to his uninjured shoulder."[2]  Essentially, Mr. English argues that the Board erred in crediting his employer's expert, Dr. Andrew Gelman, over the testimony of his own expert, Dr. Stephen J. Rodgers.  Mr. English's employer, Reed Trucking, argues that the Board's decision to accept "one expert's testimony over the contradictory testimony of another expert constitutes substantial evidence in and of itself."[3]

Because the Board relied on adequate evidence, its decision denying Mr. English's October 16, 2014 Petition to Determine Additional Compensation Due is hereby **AFFIRMED**.

---

[1]  Industrial Accident Board's Decision (Apr. 27, 2015).

[2]  Appellant's Opening Br. 11.

[3]  Employer's Answering Br. 25.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On August 5, 2013, Mr. English was working as a driver for Reed Trucking.[4] While pulling a pallet down to unload his truck, he injured his right rotator cuff.[5] He notified Reed Trucking, which acknowledged his injury was compensable. Reed Trucking paid for Mr. English's treatment and other benefits, including a right rotator cuff repair performed by orthopedic surgeon, Dr. Evan Crain, on October 22, 2013.[6]

In September 2014, Dr. Rodgers evaluated Mr. English. Dr. Rodgers concluded Mr. English's right shoulder permanent impairment was at 13 percent based on the AMA Guidelines, Fifth Edition. On January 12, 2015, Reed Trucking had Mr. English evaluated by Dr. Gelman, who determined Mr. English's impairment was two percent under the AMA, Fifth Edition or five percent under the Sixth Edition. Based on this, Reed Trucking stipulated that Mr. English was five percent impaired.

Nonetheless, based on Dr. Rodger's recommendation, Mr. English, through counsel, filed a Petition to Determine Additional Compensation Due on October 16, 2014. About a month prior to the hearing date, Reed Trucking made a settlement offer of eight percent, which Mr. English rejected. Accordingly, on

---

[4]  Industrial Accident Board's Decision at 46 (Apr. 27, 2015).

[5]  *Id.*

[6]  *Id.* at 48.

April 2, 2015, a hearing officer and two Board members held an administrative hearing to determine if Mr. English had an additional impairment above five percent. The Board issued its decision denying additional compensation on April 28, 2015. Mr. English filed a timely appeal.[7]

## APRIL 2, 2015 HEARING

### Mr. English's Testimony

Mr. English testified on his own behalf. He denied having prior injuries to either of his shoulders.[8] Mr. English testified that surgery helped with his right shoulder pain and that he only has stiffness and limited range of motion now.[9] He also testified he is back to work at this time as a freight driver for UPS; that job does not require him to lift heavy packages.[10] He has had no subsequent injury to either shoulder.[11]

---

[7] 19 *Del. C*. § 2349.

[8] Industrial Accident Board Hearing at 46 (Apr. 2, 2015).

[9] *Id*. at 48.

[10] *Id*. at 51, 53.

[11] *Id*. at 49.

**Mr. English's Medical Expert**

Dr. Rodgers testified that he is board certified in occupational medicine.[12] During his September 19, 2014 examination, Mr. English complained of a stiff shoulder, limited range of motion, and difficulty throwing, reaching, and rotating.[13] Dr. Rodgers reviewed Mr. English's history and medical records.[14] He also thoroughly examined Mr. English, measuring his internal and external rotation.[15] During his testimony, Dr. Rodgers also demonstrated to the Board how he examined Mr. English's left shoulder.[16]

Dr. Rodgers further testified that he used the AMA Guidelines Fifth Edition to rate Mr. English's impairment.[17] Dr. Rodgers agreed that the use of the AMA Guidelines is important because the AMA Guidelines provide "the only standard that exists out there. . . . for calculating impairments."[18] Dr. Rodgers testified that he chose to use the Fifth Edition because the Sixth Edition "is still a work in progress" and the "diagnosis based estimate method in there is very difficult to

---

[12]  *Id*. at 6.

[13]  *Id*. at 13.

[14]  *Id*. at 8–13.

[15]  *Id*. at 15–16.

[16]  *Id*. at 17–18.

[17]  *Id*. at 26.

[18]  *Id*. at 26.

use."[19]  When later responding to the Board's questions, Dr. Rodgers revealed that the Sixth Edition has been around since 2008 and that he was a contributor to the casebook for the Guidelines.[20]

Based on Mr. English's history, medical records, and physical examination, Dr. Rodgers concluded that Mr. English's impairment rating was 13 percent using the AMA Guidelines Fifth Edition.[21]  Dr. Rodgers testified that under the Fifth Edition, unlike the Sixth, values are combined for determining upper extremity impairment.[22]  The first value used is based on range of motion and the second value is for other conditions, such as surgery.[23]  Accordingly, Dr. Rodgers rated Mr. English's range of motion impairment as three percent and, using his clinical judgment, Dr. Rodgers compared measurable impairment results from analogous conditions listed in the Guidelines with that of Mr. English's unlisted condition and arrived at a rating of ten percent for the second value.[24]

Dr. Rodgers acknowledged that some people can have a greater or lesser range of motion – without injury – compared to the AMA Guidelines' "normal"

---

[19]  *Id*. at 23.

[20]  *Id*. at 42–43.

[21]  *Id*. at 16.

[22]  *Id*. at 20.

[23]  *Id*. at 20–22.

[24]  *Id*. at 21–22.

range of motion.[25] Dr. Rodgers also acknowledged that, although not required, the Fifth Edition suggests that the baseline from a non-injured shoulder be subtracted when determining permanency.[26] And so, Dr. Rodgers testified that what Dr. Gelman did–compare the uninjured shoulder to the injured shoulder–corresponds with the AMA, Fifth Edition.[27] Unlike Dr. Gelman, Dr. Rodgers found no impairment or restriction in Mr. English's left shoulder.[28]

**Reed Trucking's Medical Expert**

Dr. Gelman, a board certified orthopedic surgeon, testified by deposition.[29] He examined Mr. English on January 12, 2015.[30] Mr. English's primary complaint was stiffness and a lack of range of motion in his right shoulder.[31] Dr. Gelman examined Mr. English's neck and both upper extremities.[32] He measured both shoulders' range of motion.[33] Dr. Gelman testified that to determine permanent

---

[25] *Id.* at 36.

[26] *Id.* at 23.

[27] *Id.* at 36-37.

[28] *Id.* at 17–19, 40.

[29] Dr. Gelman Dep. Tr. 5.

[30] *Id.* at 7.

[31] *Id.* at 9.

[32] *Id.* at 10.

[33] *Id.* at 10–11.

impairment, he looked at Mr. English's symptoms through both the Fifth and Sixth Editions of the AMA Guidelines.

Dr. Gelman testified that according to the AMA Guidelines, his "role would be to identify what factors or parameters would best apply with regards to addressing impairment."[34] Using the Fifth Edition, he "determined that the range of motion methodology would be the best and most appropriate method to rate Mr. English."[35] For Mr. English's left shoulder–the uninjured shoulder–based on the numbers calculated for forward flexion, abduction, rotation, extension, and adduction, Dr. Gelman determined Mr. English would have a permanency of eight percent under the AMA Guidelines, Fifth Edition.[36] Dr. Gelman testified that he then "took the ranges of motion [of Mr. English's right side that he had computed and] compared that to his baseline normal left side, [which] yields a two percent upper extremity impairment."[37]

Dr. Gelman also determined Mr. English's impairment under the AMA, Sixth Edition.[38] Dr. Gelman opined that in Mr. English's case, the Sixth Edition

---

[34]  *Id*. at 16.

[35]  *Id*.

[36]  *Id*. at 11.

[37]  *Id*. at 16.

[38]  *Id*. at 18.

8

more appropriately addresses Mr. English needs, as the Sixth Edition is "more of a diagnosis-based method versus a range of motion method."[39] Although more complicated, the Sixth Edition "methodology would take into consideration the dominating factor or pathology."[40] Dr. Gelman testified he considered the rotator cuff pathology which was the dominating pathology addressed by Dr. Crain surgically on October 22, 2013.[41] Dr. Gelman's Sixth Edition assessment yielded an impairment of five percent.[42]

Dr. Gelman agreed that Dr. Rodgers rated his assessments using the AMA Guidelines, Fifth Edition.[43] But Dr. Gelman testified that he could not explain why or how he disagreed with Dr. Rodgers' 13 percent impairment rating because it was unclear to him from Dr. Rodgers' report what method Dr. Rodgers used to reach his impairment rating.[44] Dr. Gelman explained, however, that using Dr. Rodgers' range of motion numbers "would equate to [a] three percent" impairment

---

[39] *Id*. at 19.

[40] *Id*. at 19–20.

[41] *Id*. at 19.

[42] *Id*. at 18.

[43] *Id*. at 26.

[44] *Id*. at 26–27.

rating under the Fifth Edition.[45]  That is so, because Dr. Rodgers' ranges of motion were generally better than those taken by Dr. Gelman four months later.[46]

**The Board's Decision**

In its April 27, 2015 decision, the Board denied Mr. English's Petition, finding he suffered a five percent permanent impairment to his right shoulder, and he was not entitled to receive additional compensation.[47]  The Board recounted the Petition's procedural history and the hearing testimony. [48]  Taking into account the doctors' and Mr. English's testimony, the Board decided that Dr. Gelman utilized the appropriate method to rate Mr. English's impairment.

"The Board accept[ed] Dr. Gelman's opinion as more credible and reliable than Dr. Rodger's opinion in this case."[49]  The Board found that Mr. English "sustained a 5% permanent partial impairment of the right upper extremity" based on the AMA Guidelines Sixth Edition.[50]  The Board also found that Dr. Rodgers' 13 percent rating "overstates and does not accurately reflect [Mr. English's] true

---

[45]  *Id.* at 27.

[46]  *Id.* at 25.

[47]  Industrial Accident Board's Decision (Apr. 27, 2015).

[48]  *Id.* at 2–12.

[49]  *Id.* at 13.

[50]  *Id.*

loss of use."[51]  For example, ten percent of Dr. Rodgers' rating "was based on the use of an analogous procedure listed in the Fifth Edition" since Mr. English's specific surgical procedure was not listed.[52]  Conversely, Dr. Gelman's rating under the Sixth Edition "was based specifically on the type of injury [Mr. English] sustained and adjusted based on the loss of range of motion and other factors."[53]

## III.   STANDARD OF REVIEW

This Court has repeatedly emphasized the limited extent of its appellate review of the Industrial Accident Board's decisions:  the Court must determine if the Board's factual findings are supported by substantial evidence in the record[54] and whether its decision was legally correct.[55]

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[56]  The Court must, therefore, review the record to determine if the evidence is legally adequate – *i.e.*, includes some substantial evidence – to support the Board's factual findings.  In doing so the Court evaluates the record, in the light most favorable to the prevailing party,

---

[51]  *Id.*

[52]  *Id.*

[53]  *Id.*

[54]  *Histed v. E.I. duPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[55]  *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[56]  *Histed*, 621 A.2d at 342 (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

here, Reed Trucking, to determine whether substantial evidence existed to reasonably support the Board's conclusion.[57] The Court does not "weigh evidence, determine questions of credibility or make its own factual findings."[58] Rather, the Court must afford "a significant degree of deference to the Board's factual conclusions and its application of those conclusions to the appropriate legal standards."[59] For it is the Board, not the Court, that is responsible for deciding which medical expert is more credible.[60] And so, the Court does not parse the expert's testimony in order to reach its own decision about which expert is more convincing;[61] only if the Court finds that the Board's determination on expert witness credibility is unsupported by some substantial competent evidence to support the finding, may the Court overturn the Board's decision.[62]

---

[57] *Burmudez v. PTFE Compounds, Inc.*, 2006 WL 2382793, at *3 (Del. Super. Ct. Aug. 16, 2006).

[58] *Olney*, 425 A.2d at 614.

[59] *Burmudez*, 2006 WL 2382793, at *3 (citing DEL. CODE ANN. tit. 29 § 1142(d)).

[60] *See Clements v. Diamond State Port. Corp.*, 831 A.2d 870, 877-78 (Del. 2003); *see also, Coleman v. Dep't of Labor*, 288 A.2d 285, 287 (Del. Super. Ct. 1972).

[61] *Clements*, 831 A.2d at 878; *Fieni v. Catholic Health East*, 2014 WL 2444795, at *2 (Del. Super. Ct. Apr. 29, 2014).

[62] *See Clements*, 831 A.2d at 877–78; *see also, Carey v. H & H Maintenance*, 2001 WL 985114, at *2 (Del. Super. Ct. Aug. 6, 2001).

On appeal, the Court reviews legal issues *de novo*.[63] Mr. English makes no claim here that any questions of law arise from the Board's decision.

## IV. PARTIES' CONTENTIONS

### Mr. English's Argument

On appeal, Mr. English argues he is 13 percent impaired and the Board's finding that he has an eight percent impairment baseline is unreasonable and unsupported. He argues that the Board's decision "does not state how it came to a determination that [Mr. English] had an eight percent impairment to his uninjured shoulder" and "fails to address that a physical examination was done at the hearing."[64] At bottom, Mr. English argues that the Board erroneously accepted Dr. Gelman's expert testimony over that of Dr. Rodgers.

### Reed Trucking's Argument

In response, Reed Trucking argues that the Board's acceptance of one expert's testimony over the contrary opinion testimony of another meets the "substantial evidence" standard.[65] Moreover, Reed Trucking says Mr. English stipulated that Dr. Gelman was qualified to rate Mr. English's impairment, thereby allowing the Board to "choose to rely upon Dr. Gelman instead of Dr. Rodgers in

---

[63] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).

[64] Appellant's Opening Br. 11.

[65] Employer's Answering Br. 25.

this matter."[66]  Reed Trucking also suggests that the Board's "Summary of Evidence" section of its decision addressed the physical examination that was done at the hearing.  And that Dr. Rodgers "admitted that he did not have any way to measure Claimant's ranges of motion at the hearing [and] therefore, could only testify that there were 'minimal deficits today, as there were when I measured it.'"[67]

## V.  DISCUSSION

The Court's role is limited to determining whether there was substantial evidence supporting the Board's findings and whether the decision was legally correct.[68]  The Board, not the Court, is responsible for deciding which medical expert is more believable on a given point.[69]  The Board is entitled to accept the testimony of one medical expert over the testimony of another expert[70] and the Board certainly does not err by accepting one expert's opinion over that of the other if the Board "set[s] forth the factual basis for its conclusion" and the "factual

---

[66]  *Id*. at 26.

[67]  *Id*. at 23.

[68]  *Johnson*, 213 A.2d at 66.

[69]  *Coleman*, 288 A.2d at 287.

[70]  *Standard Distrib. Co. v. Nally*, 630 A.2d 640, 646 (Del. 1993).

findings are supported by the record."[71] "The medical testimony of one doctor, while not in agreement with that of [another], [i]s sufficient competent evidence" supporting the Board's decision.[72]

The Board heard from Dr. Rodgers and Dr. Gelman. The outcome turned on which expert's opinion the Board credited. The Board accepted Dr. Gelman's opinion that the proper method for determining impairment was under the AMA Guidelines, Sixth Edition and under that edition, Mr. English had an impairment rating of five percent. In its decision, the Board unambiguously stated that: "The Board accept[ed] Dr. Gelman's opinion as more credible and reliable than Dr. Rodger's opinion in this case."[73]

The Board determined that Dr. Gelman's use of the Sixth Edition was appropriate in Mr. English's case. In its decision, the Board referenced the testimony of both experts, the testimony of Mr. English, and articulated why it decided to accept Dr. Gelman's opinion. The Board explained why it found that Dr. Rodgers' 13% rating "overstates and does not accurately reflect [Mr. English's] true loss of use."[74] For example, the Board noted that the Sixth Edition

---

[71] *See Clements*, 831 A.2d at 877.

[72] *Gen. Motors Corp. v. Veasey*, 371 A.2d 1074, 1076 (Del. 1977).

[73] Industrial Accident Board's Decision, at 13 (Apr. 27, 2015).

[74] *Id.*

15

specifically listed the type of surgery and injury Mr. English had, while the Fifth Edition did not.[75] The Board noted other evidence supporting its conclusion, such as: Mr. English's testimony that his "shoulder is essentially pain free;" he has "stiffness and minor loss of motion in several planes of motion;" and other than lifting heavy packages, his shoulder does not "affect his work or activities."[76] Accordingly, the Court is satisfied that the Board based its conclusion on factual findings that were supported by substantial evidence.

## VI.    CONCLUSION

For the forgoing reasons, the decision of the Industrial Accident Board denying Kenneth English's October 16, 2014 Petition to Determine Additional Compensation Due is hereby **AFFIRMED**.


**IT IS SO ORDERED**.

*/s/ Paul R. Wallace*_____
Paul R. Wallace, Judge


Original to Prothonotary
cc:    All counsel via File & Serve

---

[75]    *Id*.

[76]    *Id*.