# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AFL NETWORK SERVICES, )
                                         )

       Employer-Below, Appellant, )

                                           )

       v. )       C.A. No. N15A-09-002 ALR

                                           )

THOMAS HEGLUND, )

                                           )

       Claimant-Below, Appellee. )

## MEMORANDUM OPINION

Submitted: March 8, 2016
Decided: April 18, 2016

*On Appeal from Decision of the Industrial Accident Board*
**AFFIRMED**

Linda Wilson, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, Attorney for Employer-Below/Appellant

Samuel D. Pratcher, III, Esquire, and Gary S. Nitsche, Esquire, Weik, Nitsche & Dougherty, Wilmington, Delaware, Attorneys for Claimant-Below/Appellee

**ROCANELLI, J.**

On March 29, 2004, Thomas Heglund ("Claimant") suffered a cervical spine injury while working for his employer, AFL Network Services ("Employer"). After the injury, Claimant had two cervical spine surgeries to treat his injuries: one on June 17, 2004 and one on November 16, 2011.[1] Employer compensated Claimant for a thirty percent permanent impairment of the neck, a ten percent permanent impairment of the upper extremity, and for disfigurement of the neck.

Claimant's first surgery on June 17, 2004 involved a cervical fusion involving the C5 and C6 corpectomy (surgical approach was anterior and posterior), C4-C7 interbody fusion, C4-C7 segmental instrumentation, local autograft, and removal of the anterior cervical plate. Claimant also received injections. Sometime after this surgery, Claimant developed increasing pain in the neck and posterior headaches that included pain in both shoulders and down his arms. Despite Claimant's continued chronic neck and bilateral arm pain, Claimant's doctor, Dr. Rastogi, recommended against additional surgery.

Dr. Bose, a board-certified neurosurgeon, began treating Claimant on November 15, 2010 for chronic pain. Dr. Bose concluded additional surgery was necessary to reduce Claimant's need for medication, to realign his spine, and to improve kyphosis. On November 16, 2011, Dr. Bose performed decompression and fusion surgery at C3-4 and at C7-T1. Claimant was doing well shortly after

_____

[1] Prior to the work injury at issue here, Appellant had a cervical surgery on April 3, 2002. Appellant was symptom-free after the 2002 surgery.

this surgery; however, Claimant began to report pain in his right shoulder, pain in his left side, pain worsening in time and decreasing functional ability. Claimant reported that physical therapy was not helping and he continued to feel worsening and new pain in the neck and arms. It was also necessary for Claimant to take a significant amount of pain medication. Dr. Bose recommended additional surgery to treat Claimant's chronic and worsening pain and to reduce Claimant's reliance on pain medications.

## Procedural History

Claimant sought compensation for the proposed additional surgery through Employer; however, Employer opposed payment. On April 1, 2013, Claimant filed a Petition for Additional Compensation Due with the Industrial Accident Board ("Board"). On September 19, 2013, a hearing was held before a Workers' Compensation Hearing Officer ("Hearing Officer"), sitting in place of the Board pursuant to 19 *Del. C.* § 2301B by stipulation of the parties. The Hearing Officer issued its decision on November 5, 2013 ("Board Decision I") concluding that the proposed additional surgery was not reasonable or necessary.

Claimant subsequently filed an appeal of Board Decision I. By Opinion and Order dated July 3, 2014, this Court reversed Board Decision I, finding that the conclusion that the additional surgery was not reasonable or necessary was

2

inconsistent with the record findings set forth in Board Decision I.[2] The matter was remanded to the Hearing Officer for consideration of conclusions consistent with the factual findings set forth in Board Decision I.[3]

On January 16, 2015, the Hearing Officer issued a Decision on Remand without supplementing the record, again denying additional compensation ("Board Decision II"). Claimant subsequently filed an appeal of Board Decision II. By Opinion and Order dated July 23, 2015, this Court reversed Board Decision II, finding that the Board's conclusion that the proposed surgery was not reasonable or necessary was inconsistent with the findings in Board Decision II.[4] This Court remanded the matter with instructions to the Board to provide Claimant additional compensation for the surgery consistent with the findings in Board Decision II.[5]

The Board issued its Decision on Remand on August 6, 2015 ("Board Decision III"), granting Claimant's Petition to Determine Additional Compensation Due for the proposed surgery. Employer now appeals Board Decision III and argues that this Court committed reversible error when it remanded Board Decision II with instructions to provide Claimant additional compensation for the surgery.

---

[2] *See Heglund v. AFL Network Servs.*, 2014 WL 3510232, at *3 (Del. Super. July 3, 2014).
[3] *Id.*
[4] *Heglund v. AFL Network Servs.*, 2015 WL 4498813, at *2 (Del. Super. July 23, 2015).
[5] *Id.*

## Standard of Review

The Court's appellate review of a Board decision is limited. The Court's role is to "determine whether the decision of the Board is supported by substantial evidence and free of legal error."[6] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[7] If substantial evidence in support of the Board's decision exists, then the Board's decision stands,[8] even if the Court would reach a contrary conclusion.[9] In making its determination, the Court reviews the record below in the light most favorable to the prevailing party.[10] The Court will not weigh the evidence, determine credibility, or make its own factual findings.[11] Absent legal error, which is reviewed *de novo*,[12] the standard of review is abuse of discretion.[13] A Board's discretionary ruling will not be disturbed on appeal unless it is based on "clearly unreasonable or capricious grounds."[14] "The Board has abused its discretion only

---

[6] *Standard Distrib., Inc. v. Hall*, 897 A.2d 155, 157 (Del. 2006); *see also Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).
[7] *Standard Distrib., Inc.*, 897 A.2d at 158 (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).
[8] *Person-Gaines*, 981 A.2d at 1161.
[9] *H&H Poultry v. Whaley*, 408 A.2d 289, 291 (Del. Super. 1979).
[10] *Bermudez v. PTFE Compounds, Inc.*, 2006 WL 2382793, at *3 (Del. Super. Aug. 16, 2006).
[11] *Person-Gaines*, 981 A.2d at 1161; *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[12] *Person-Gaines*, 981 A.2d at 1161.
[13] *Id.*
[14] *K-Mart, Inc. v. Bowles*, 1995 WL 269872, at *2 (Del. Super. Mar. 23, 1995).

when its decision has exceeded the bounds of reason in view of the circumstances" so as to produce injustice.[15]

### Discussion

Employer argues that the Court committed reversible error when it reversed and remanded Board Decision II with instructions to award Claimant additional compensation for the proposed surgery and, therefore, Board Decision III must be reversed. Employer contends that the Board was free to accept the expert testimony of Dr. Rushton, Employer's expert, who testified that Claimant's proposed surgery is not reasonable or necessary because it would not address the underlying condition and the surgery could worsen Claimant's condition.

If an employee suffers a compensable work injury, an employer is obligated to pay for reasonable and necessary expenses related to that injury under 19 *Del. C.* § 2322(a) ("Section 2322").[16] The legislative purpose of Section 2322 is twofold: "(1) to insure at all times adequate medical assistance to the employee; and (2) to insure the employer against unreasonable charges and fraudulent claims."[17]

---

[15] *Person-Gaines*, 981 A.2d at 1161 (internal quotation omitted); *see also K-Mart, Inc.*, 1995 WL 269872, at *2.

[16] *See Harasika v. State*, 2013 WL 1411233, at *4 (Del. Super. Feb. 28, 2013) (referring to 19 *Del. C.* § 2322).

[17] *Willey v. State*, 1985 WL 189319, at *2 (Del. Super. Nov. 26, 1985) (internal citations omitted).

5

Section 2322 does not define "reasonable" or "necessary" and, therefore, what is reasonable or necessary is left to be determined by the Board.[18]

While Employer argues—and is correct—that the Board was permitted to accept the expert testimony of one expert over another,[19] this Court is not concerned that the Board found Dr. Rushton more credible than Claimant's expert witness (Dr. Bose) who proposes the additional surgery. Instead, the Court is concerned that the Board made its decision as to what is reasonable and necessary based primarily on a success rate.[20] Black's Law Dictionary defines "reasonable" as "[f]air, proper, or moderate under the circumstances; sensible"[21] and "necessary" as "[t]hat is needed for some purpose or reason; essential."[22] Accordingly, what may otherwise not be a "successful" surgery may nevertheless be fair, proper, sensible, and needed for some purpose or reason under the circumstances. Whether Claimant's additional surgery will be successful is purely speculative,[23] and does not reflect whether it is reasonable and necessary under Claimant's circumstances.

Moreover, in proposing the additional surgery for Claimant, Dr. Bose testified that there were two surgical purposes. The primary purpose of the surgery

---

[18] *Id.*

[19] *See Bullock v. K-Mart Corp.*, 1995 WL 339025, at *3 (Del. Super. May 5, 1995).

[20] *See* Board Decision I, Nov. 5, 2013, p. 17.

[21] BLACK'S LAW DICTIONARY (10th ed. 2014).

[22] *Id.*

[23] Indeed, while Dr. Rushton opines that the additional surgery will not be successful, Dr. Bose testified that the surgery has a success rate of approximately seventy-five percent.

6

is to reduce Claimant's intake of pain medications by lowering Claimant's pain level. The secondary purpose of the surgery is to determine if Claimant has any loosening of cervical spine screws at previous infusion sites.

While the Board in Board Decision I and Board Decision II discussed the primary purpose of reducing pain and pain medication and conceded that Claimant is in "extraordinary pain" and is "functionally limited[,]"[24] the Board failed to address the secondary purpose of determining whether any screws are loose. Further, the record suggests that Dr. Rushton did not opine on this secondary purpose. Nevertheless, the Board conceded that "Claimant may require surgery to fix any screws that may be loose."[25] Accordingly, the Board recognized the validity of the secondary purpose for the additional surgery; however, failed to address this purpose before determining that the proposed surgery is not a reasonable and necessary approach to correcting such a problem. While Employer was obligated to compensate Claimant for his first two surgeries, the Board now contends that Employer is not obligated to compensate Claimant for a third surgery, which may adress complications (loosening screws) that derived from one of the previous compensated surgeries.

---

[24] Board Decision I, Nov. 5, 2013, p. 16.
[25] *Id.* at p. 17.

## **Conclusion**

The Court has examined the record below and determined that substantial evidence supports Board Decision III and Claimant was properly awarded additional compensation for the proposed surgery. Accordingly, Board Decision III must be and hereby is **AFFIRMED**.

**IT IS SO ORDERED** this 18th day of April, 2016.

*Andrea L. Rocanelli*

_____
The Honorable Andrea L. Rocanelli