IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| A. BRAD RICHARDSON, | § | |
| | § | |
| Defendant Below, | § | No. 574, 2016 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | C.A. S16A-02-002 |
| BOARD OF PENSION TRUSTEES, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:  August 23, 2017
Decided:    August 29, 2017

Before **VALIHURA**, **SEITZ**, and **TRAYNOR**, Justices.

## ORDER

This 29th day of August, 2017, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant, A. Brad Richardson, filed this appeal from a Superior Court decision upholding the Board of Pension Trustee's (the "Board's") denial of his request that the vesting period for his State pension be shortened from ten to five years. Richardson claims that, in reliance upon statements on the Office of Pensions ("OPen") website that State employees are eligible for a service pension at age 62 if at that time they have five years of credited service, he resigned from a position in the private sector and accepted a job with the Delaware Department of Natural Resources and Environmental Control ("DNREC"). After accepting the DNREC

1

position in late 2013, Richardson learned that the information on the OPen website was incorrect and that the vesting period had been changed to ten years as of January 2012. It is undisputed that, at the time of Richardson's hiring, the erroneous vesting information remained on the OPen website, but there was also evidence that the correct information appeared at other locations on the website.

(2)     Richardson contends that the Board, by virtue of the clear statement on the OPen website and his reliance thereon, is estopped from applying the five-year vesting period to him. The Board rejected this argument, concluding that Richardson did not rely solely on the website and that his purported reliance was not detrimental. The Superior Court held that the Board's conclusions were supported by substantial evidence in the record and free from legal error and therefore affirmed the Board's denial of Richardson' request. We agree with the Superior Court and affirm.

(3)     Effective January 1, 2012, the General Assembly revised the State Employees' Pension Plan to increase the pension vesting period of employees hired after January 1, 2012 from five to ten years.[1] Unfortunately, the State neglected to update various pages appearing on its pension and new-employee websites.

(4)     In late 2013, Richardson, then 57 years old and an employee of Tidewater Utilities, began the search for a new job that might make it easier for him to retire at age 62. He hoped to find a job that had a pension package with a "fairly

---

[1] 29 *Del. C.* §5523.

2

short" vesting period, "like five years."[2] As part of this search, he reviewed the State of Delaware website and learned—or so he thought—that the State Employees' Pension Plan allowed for vesting at age 62 after five years of credited service. He then interviewed for two State positions and was offered a spot as an environmental scientist with DNREC at an annual salary of $44,094, a 33% increase over his $33,000 annual Tidewater salary. Not surprisingly, Richardson accepted the DNREC offer. He testified, however, that "the single most important criterion" supporting his decision to leave Tidewater and join DNREC was not the substantial salary increase but "the promise of a pension with a short vesting period—five years."[3]

(5)    Richardson's belief that the relevant vesting period was five years was not whimsical. Before he interviewed with DNREC, he consulted the OPen website where he read that the vesting period was five years. He testified that, at the end of each of his two interviews, he asked about the State's pension benefits and on both occasions was referred to the State's website which he then "double-check[ed]."[4] Again, he saw that the vesting period was five years. After accepting the DNREC position and being directed to the "online new employee orientation course,"

---

[2] App. to Opening Br. at A24-25.
[3] *Id.*; *see also id.* at A69.
[4] *Id.* at A24-25.

3

Richardson once again encountered the erroneous statement that he would be eligible for his pension upon reaching age 62 with five years of credited service.

(6) Shortly after Richardson started at DNREC in late November of 2013, he first learned during a conversation with a friend whose husband was a state employee that he might be mistaken in believing that the State's pension vesting period was five years. The friend told Richardson that she thought there was a ten-year vesting requirement. Rather than ask a human-resources representative at DNREC to clarify the issue, Richardson once again went to the State of Delaware website and saw that the vesting period was five years. He printed the page and put it in his "file."

(7) In April of 2014, Richardson attended an OPen pension workshop. He testified that, "even though [he] knew [he] wasn't eligible [for a pension] for another four and a half years, [he] was curious to hear what they had to say so [he] went."[5] During the workshop, he learned that his friend was right and that what he had seen on the State website was wrong; in fact, his eligibility for a pension was subject to a ten-year vesting requirement. This prompted him to contact his immediate supervisor and a DNREC human resources supervisor to whom he showed screenshots of the website pages he claimed to have relied upon, and announced his expectation that the State would "honor the promise under which he accepted [the

---

[5] *Id.* at A29-30.

4

DNREC] job."[6] A few months later he enlisted the assistance of his State representative and, when that was unavailing, sought relief from the State Pension Administrator. Specifically, he asked the Administrator "to apply a five year vesting period for pension eligibility to him."[7] When the Administrator denied his request, Richardson appealed to the Board, arguing that the State was administratively estopped from applying the five-year vesting period. The Board rejected this contention, principally because "[it was] not persuaded that Mr. Richardson relied solely upon the incorrect webpage, or that he relied to his detriment, given the nearly 30% increase in salary he earned in the DNREC job." The Superior Court affirmed.

(8)    On appeal from a Superior Court decision affirming a decision of an administrative agency, our function "is, in effect a replication of that performed by the Superior Court."[8] Absent an abuse of discretion, the agency's decision must be affirmed.[9] Our review is limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency and free from legal error.[10] Substantial evidence has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence is more than a scintilla and less than a preponderance."[11]

---

[6] *Id.* at A33.
[7] *Id.* at A4.
[8] *Future Ford Sales, Inc. v. Pub. Serv. Comm'n*, 654 A.2d 837, 842 (Del. 1995).
[9] *Stoltz Mgmt. Co. v. Consumer Affairs Bd.*, 616 A.2d 1205, 1208 (Del. 1992).
[10] *Id. See also* 29 *Del. C.* § 10142(d).
[11] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (internal quotation marks omitted).

5

(9)    Although Richardson now contends that the Board and the Superior Court committed "legal error" by "disregarding the uncontroverted evidence . . . which demonstrates that Richardson has established a valid administrative estoppel claim,"[12] in reality he is challenging the Board's finding that the purported proof of the factual underpinnings of his claim was unpersuasive.

(10)    To prevail on his administrative estoppel claim, Richardson must establish that:

> (i)    a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise.[13]

(11)    The Board found that Richardson supplied unpersuasive proof of three of the four elements listed above.  More particularly, the Board found that:

> (i)  It was not the reasonable expectation of the State to induce action on Richardson's part because "[t]he failure to change the five-year reference was a mistake, and not intended to mislead a new employee."[14]  The Board also cited the inclusion of the correct information on other website pages as undermining Richardson's proof of this factor.[15]

---

[12] Opening Br. at 15.
[13] *Harmon v. State*, 62 A.3d 1198, 1200-01 (Del. 2013) (citation omitted).
[14] App. to Opening Br. at A8.
[15] *Id.*

6

(ii) Richardson did not rely solely upon the incorrect vesting information in making his decision to leave Tidewater and join DNREC and that any reliance was not detrimental "given the nearly 30% increase he earned in the DNREC job."[16]

(iii) The difference in the vesting periods is not so substantial as to render the failure to enforce the purported promise manifestly unjust.[17]

(12) There is more than adequate evidence—or the lack thereof where proof is required—to support the Board's conclusion that Richardson did not rely *to his detriment* on the incorrect vesting period information.

(13) As the Board and the Superior Court aptly noted, Richardson's acceptance of the DNREC position and its attendant 33% salary increase improved his financial position significantly without regard to his eligibility for a State pension. But his eligibility for a pension—a benefit that he did not have with Tidewater—was also a beneficial aspect of his decision. The Board's conclusion that Richardson did not rely solely on the incorrect vesting information when he changed jobs and that, in any event, the change was not detrimental was supported by the record.

(14) The reasonableness of Richardson's purported reliance is also suspect. As the Superior Court noted, under Delaware law, a State employee does not have

---

[16] *Id.*
[17] *Id.*

7

contractual rights in the State pension plan until the pension is vested.[18] Therefore, even if Richardson's pension benefits were subject to a five-year vesting period at the time he was hired, the State could change the length of that period at any time prior to his vesting. Moreover, it should have been—and probably was—clear to Richardson that the amount of his pension benefit after only five years of State employment was insignificant relative to the salary increase he would enjoy over that five-year period. Stated differently, it would be unreasonable from a financial point of view for Richardson to have rejected the 33% salary increase had he known that his pension benefits would vest in ten (not five) years. This rather obvious financial fact undermines the credibility of Richardson's testimony and provides adequate support for the Board's finding of the absence of reasonable and detrimental reliance.[19]

(15) Finally, Richardson's implication that, because his testimony that he relied exclusively and detrimentally upon the incorrect vesting information posted on the State's website was uncontroverted, the Board was legally bound to accept it is misguided. "[T]he trier of fact . . . is at liberty within the bounds of reason to reject entirely the uncontradicted testimony of a witness which does not convince

---

[18] *Petras v. St. Bd. of Pension Trustees*, 464 A.2d 894, 895-96 (Del. 1983).
[19] Because of this determination, we need not address the reasonable-expectation and avoidance-of-injustice prongs of the estoppel analysis.

8

the trier of its merit."[20]  For the reasons previously stated, the Board's rejection of Richardson's testimony relating to reliance was not an abuse of discretion and was well within the bounds of reason.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Superior Court's order is AFFIRMED.

BY THE COURT:

/s/ Gary F. Traynor
Justice

---

[20] *Rhoades, Inc. v. United Airlines, Inc.*, 340 F.2d 482, 486 (3d Cir. 1965) (citing *Wooley v. Great Atlantic & Pacific Tea Co.*, 281 F.2d 78 (3d Cir. 1960)).

9