# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DIAMOND PORT PROPERTY, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | C.A. No. N24A-05-004 FWW |
| v. | ) | |
| | ) | |
| CITY OF WILMINGTON ZONING BOARD OF ADJUSTMENT, THE MAYOR OF THE CITY OF WILMINGTON BEING MICHAEL S. PURZYCKI, IN HIS OFFICIAL CAPACITY, AND THE CITY OF WILMINGTON ZONING ADMINISTRATOR BEING JIM DIPINTO, IN HIS OFFICIAL CAPACITY | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Appellees. | ) | |

Submitted: November 26, 2024
Decided: December 20, 2024

## ORDER

*Upon Appellant Diamond Port, LLC's Motion for Discovery under 22 Del. C. § 330:*

## DENIED.

Nicholas G. Kondraschow, Esquire RHODUNDA, WILLIAMS & KONDRASHOW, Brandywine Plaza West, 1521 Concord Pike, Suite 205, Wilmington, DE 19803, attorney for Appellant Diamond Port Property, LLC.

Rosamaria Tassone-DiNardo, Esquire, Deputy City Solicitor, Mengting Chen, Esquire, Assistant City Solicitor, CITY OF WILMINGTON LAW DEPARTMENT, Louis L. Redding City/County Building, 800 North French Street, 9th Floor, Wilmington, DE 19801, attorneys for Appellees City of Wilmington Zoning Board of Adjustment, the Mayor of the City of Wilmington being Michael S. Purzycki in his official capacity, and the City of Wilmington Zoning Board of Adjustment Administrator being Jim DiPinto in his official capacity.

**WHARTON, J.**

This 20th day of December, 2024, upon consideration of the Motion for Discovery of Appellant Diamond Port Properties ("Diamond Port"),[1] the Response of Appellees City of Wilmington Zoning Board of Adjustment ("Board"), the Mayor of the City of Wilmington being Michael S. Purzycki in his official capacity ("Mayor Purzycki"), and the City of Wilmington Zoning Administrator being Jim DiPinto in his official capacity ("DiPinto") (collectively "Appellees" or the "City"),[2] and Diamond Port's Reply,[3] it appears to the Court that:

1. Diamond Port initiated this appeal pursuant to 22 *Del. C*. § 328(a).[4] The appeal comes after the Board denied Diamond Port's application for special exceptions, area variances, and equitable relief in connection with the construction of a wholesale storage warehouse and light manufacturing facility at 1, 25, and 51 South Heald and 0 Lobdell Streets in a W-4 zoning district in the City of Wilmington.[5]

2. A writ of *certiorari* was issued requiring the Board to return:

> …certified or sworn copies of all papers acted upon it, including, but not limited to transcripts (written and/or audio) of the Board's February 12, 2024 hearing and the Board's April 26, 2024 decisional hearing, and all

---

[1] Mot. for Discovery, D.I. 17.
[2] Resp., D.I. 19.
[3] Reply, D.I. 20.
[4] Petition, D.I. 1.
[5] *Id*. at 1.

> documents handed to the Board at or prior to the hearing for the Board's consideration which comprise the record before the Board…[6]

A certified copy of the record was filed on July 15, 2024.[7]

3. In its Petition for Issuance of a Writ of *Certiorari,* Diamond Port identifies 12 grounds for its appeal.[8] Four of those grounds appear to relate to Diamond Port's contention that the Board was equitably estopped from denying its application.[9] Briefly stated, Diamond Port's equitable estoppel argument is based on actions it claims it took in reliance on a November 25, 2020 zoning certification, statements of Mayor Purzycki, City of Wilmington Standards of Review for Development in the Waterfront Zoning Districts, and the Wilmington City Code.[10]

4. On October 21, 2024, Diamond Port moved for discovery and/or for the Court to take testimony and evidence pursuant to 22 *Del. C.* § 330.[11] That section provides:

> Hearing on appeal. – If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with findings of fact and conclusions

---

[6] Order, D.I. 4.
[7] Record, D.I. 11.
[8] Petition, at ¶ 12, D.I. 1 .
[9] *Id.,* at ¶¶ 10B, D, H, and I.
[10] *Id.* at ¶¶ 3-6.
[11] Mot. for Discovery, D.I. 17.

of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made.[12]

5.    Diamond Port asserts it will be prejudiced in presenting its equitable estoppel argument on appeal without certain "limited discovery."[13]  In particular, it seeks discovery of: (1) e-mail communications set forth in a FOIA request concerning the enactment of Ordinance 21-040 which it deems adverse to its development project; (2) responses to its FOIA request and  sworn testimony from an appropriate City official regarding what Diamond Port considers an intentional disregard of the City's Comprehensive Plan when its application was denied; (3) responses to its FOIA request and sworn testimony from Mr. DiPinto regarding what Diamond Port describes as the Board's summary dismissal of the relevance of a Zoning Certification for the property; and (4) responses to its FOIA request and sworn testimony from Mayor Purzycki and individual Board members concerning Diamond Port's belief that there was active solicitation of Board members by the Mayor's Office to reject the application.[14]

6.    Appellees oppose the motion on two grounds.[15]  First, they argue that this Court's review of the Board's decision is limited and the discovery sought by

---

[12] 22 *Del. C.* § 330.
[13] Mot. for Discovery, at ℙ 9, D.I. 17.
[14] *Id.,* at ℙ 8.
[15] Resp., D.I. 19.

Diamond Port is not authorized by § 330.[16] In their view, § 330 should be applied only "to supplement the record with evidence *already* in a party's possession *and only when* the Court has determined the decision on appeal is not supported by substantial evidence."[17] They dispute the utility of additional discovery to support Diamond Port's equitable estoppel claim related to Ordinance 21-040, given the process for amending the Zoning Code, and the fact that a public hearing was held on the ordinance one month before Diamond Port purchased the property and one year before it submitted its development plans.[18] They characterize Diamond Port's suspicion of collusion between the Board and Mayor Purzycki as "reading like a conspiracy theory."[19] Because the Mayor and Board act independently and impartially, the Mayor's expressed support for a proposal does not guarantee its success.[20] Finally, they cite what they believe to be the substantial evidence supporting the Board's decision that would preclude discovery.[21]

7. In Reply, Diamond Port challenges the City's contention that its arguments for discovery are a conspiracy theory and nothing more than speculation.[22] It points to an internal City e-mail contained in the record below

---

[16] *Id.*
[17] *Id.* at ₱ 1.
[18] *Id.* at ₱ 2.
[19] *Id.* at ₱ 3.
[20] *Id.*
[21] *Id.* at ₱ 5.
[22] Reply, at ₱ 1, D.I. 20.

confirming that at least one meeting was held in the Mayor's Office with the Deputy Director of Planning to discuss Diamond Port's application.[23] Another e-mail, also included in the record below, confirms that the Planning Manager wanted to know whether the Mayor had taken a position on the application.[24] It argues that the denial of its FOIA request prevented Diamond Port from shedding light on the "degree and depth of the Mayor's communication with City's professional planners, along with Board or Commission members."[25] Finally, it disagrees with Appellees' interpretation of § 330, arguing that the limitations on its applicability suggested by the City contravene the plain language of the statute.[26] Citing page limitations, Diamond Port only briefly addresses in a footnote the City's argument that the Board's decision is supported by substantial evidence.[27]

8. Appeals to the Superior Court from municipal zoning boards of adjustment are governed by 22 *Del. C.* § 328. That section provides anyone aggrieved by a decision of a board of adjustment, may petition the Superior Court, specifying the grounds upon which the petitioner contends the decision was illegal.[28]

---

[23] *Id.* at ¶ 2.
[24] *Id.*
[25] *Id.* at ¶ 4.
[26] *Id.* at ¶¶ 7-9.
[27] *Id.* at n. 3.
[28] 22 *Del. C.* § 328(a).

The Court may then allow for a writ of *certiorari* directed to the Board to review the Board's decision.[29] The Court may "reverse, affirm, wholly or partly, or may modify the decision brought up for review."[30] As noted, § 330 allows the Court to take additional testimony if it appears to the Court such testimony is necessary for "a proper disposition of the matter."[31]

9.      In this appeal, unlike a common law writ of *certiorari,* the reviewing court is not strictly limited in what it can consider. In *Black v. New Castle Co. Bd. of License*, the Delaware Supreme Court stated that the reviewing court "may not weigh evidence or review the lower tribunal's factual findings" and cannot consider the case on its merits.[32] The review is limited to determining whether the lower tribunal: "(i) exceeded its jurisdiction; (ii) proceeded illegally or manifestly contrary to law; or (iii) proceeded irregularly."[33] But, although this appeal was initiated by a writ of *certiorari*, it is not a common law *certiorari* appeal. It is a statutory appeal authorized by 22 *Del. C.* § 328. In such appeals, this Court reviews the Board's decision for errors of law and determines whether substantial evidence exists to support the Board's conclusions.[34] Typically, the Court "will not weigh the

---

[29] 22 *Del. C.* § 328(b).
[30] 22 *Del. C.* § 328(c).
[31] 22 *Del. C.* § 330.
[32] 117 A. 3d 1027, 1031 (Del. 2015).
[33] *Id.*
[34] *Bd. of Adjustment of Sussex Cty. v. Verleysen*, 36 A.3d 326, 329 (Del. 2012).

evidence, determine questions of credibility, or make [its] own factual findings."[35] But, § 330 allows it to do just that – "[The court] may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with findings of fact and conclusions of law…"[36]

10.    It is useful to properly contextualize the motion.  This appeal is from a decision of the Board which the court reviews for errors of law and whether substantial evidence supports the Board's decision. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[37]

11.    Diamond Port seeks discovery of responses to its FOIA request and sworn statements from a number of individuals.[38]  Its FOIA request asked for: (1) all e-mails, memorandums, letters, or correspondence concerning the sponsorship of Ordinance 21-040; (2) all research and/or analysis of the reasoning supporting Ordinance 21-040; (3) all e-mails, between the Office of the Mayor and any member of the City Council about Ordinance 21-040; (4) all recorded transcript [sic] (whether audio or video) of the  October 7, 2021 City Council meeting wherein Ordinance 21-040 was passed; (5) any recorded transcript (whether audio or video)

---

[35] *Id.*

[36] 22 *Del. C.* § 330.

[37] *Snyder v. New Castle Cty.*, 135 A.3d 763, 2 (Del. 2016) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[38] Mot. for Discovery at ℙ 8, D.I. 17.

of the July 8, 2021 First Reading of Ordinance 21-040; and (6) any e-mail letters, or correspondence of any kind wherein any member of City Council discussed Ordinance 21-040.[39] It seeks sworn testimony from: (1) "an appropriate City official" concerning what Diamond Port describes as an intentional disregard of the City's Comprehensive Plan; (2) the Zoning Administrator - Mr. DiPinto; (3) Mayor Purzycki; (4) and individual members of the Planning Commission.[40] All of this evidence is needed, in Diamond Port's opinion, in order to convince the Court of the merits of its equitable estoppel argument, which it contends it was prevented by the Board from fully presenting.[41]

12. The Board's Resolution contained an extended discussion of the doctrine of equitable estoppel generally, and as applied to Diamond Port's application specifically.[42] The Board concluded that the "defense of equitable estoppel does not prevent the City from enforcing its Zoning Code in this case."[43] The Board also addressed Ordinance 21-040 and concluded that its "codified special exceptions, originally, and as amended, are consistent with the Comprehensive Plan and, therefore, valid and enforceable legislative acts of the City."[44] While this

---

[39] *Id.* at Ex. A.
[40] *Id.* at ℙ 8.
[41] *Id.*
[42] Record, Ex. 1 at 7-13, D.I. 11.
[43] *Id.* at 13.
[44] *Id.*

motion is not the proper vehicle for discussing the merits of the Board's analysis, it is sufficient to observe that Diamond Port's equitable estoppel and Ordinance 21-040 arguments were entertained by the Board and discussed in detail in its decision.

13.     The language of § 330 makes it plain that the Court may invoke it in its discretion – "*if* it shall appear to the court…that testimony is necessary for the proper disposition of the matter, it *may* take evidence…"[45]   Here, after carefully reviewing the record, the Court concludes that taking additional evidence is not necessary for the Court to perform its appellate function.  The Board's decision explained why it felt it was not bound by the erroneous certificate of zoning Diamond Port obtained from its realtor and its seller.[46]   More importantly it explained why it concluded Diamond Port, whose principals were "sophisticated developers of substance and resources who testified to decades of experience in commercial development,"  had "both the responsibility to know the lawful uses of the land they intended to purchase and the means to discover the truth."[47]   It also explained why it determined that Ordinance 21-040 was enacted properly.

14.     Much, if not all, of the discovery Diamond Port seeks in its motion relates to Ordinance 21-040.  The Court is not convinced that taking additional evidence regarding how the ordinance became law, including who initiated it, who

---

[45] 22 *Del. C.* § 330.
[46] Record, Ex. 1 at 11, D.I. 11.
[47] *Id.*

11

lobbied for it, who supported it, and why, would be necessary for the "proper disposition of the matter."  Further,  the additional discovery has the potential to be more expansive than Diamond Port envisions.  Depending on what such discovery might produce, either or both parties might want to expand the record further to introduce additional documents or testimony, taking the Court down the road to a potential *de facto* trial on the issue.[48]  That is a road the Court declines to travel. The record is more than adequate for the Court to perform its limited appellate function of determining whether the Board's decision was free from legal error and supported by substantial evidence.

**THEREFORE,** Appellant Diamond Port Property, LLC's Motion for Discovery under 22 *Del. C.* § 330 is **DENIED.**  A brief schedule shall issue. **IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, Judge

---

[48] In its Petition, Diamond Port expressly reserved "all of its legal and equitable rights of every kind whatsoever to bring additional causes of actions and/or claims directly or indirectly related to the City of Wilmington (including, but not limited to legislative bodies, boards, commissions, employees, consultants, and authorized agents, in their official and/or individual capacity) acceptance, review, and/or denial of Diamond Port subdivision application (also referred to herein as the "Compromise Plan") in State and/or federal courts."  Petition at n. 2, D.I. 1.  The Court notes that the exercise of those rights would unburden Diamond Port of the limited standard of review applicable to this appeal.