## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KRYSTAL PATTERSON,<br>    Employee-Below/Appellant, | ) ) ) | |
| v. | ) ) ) | |
| DEPARTMENT OF HEALTH AND<br>SOCIAL SERVICES/DIVISION OF<br>MANAGEMENT SERVICES,<br>    Employer-Below/Appellee.<br>and the<br>MERIT EMPLOYEE RELATIONS<br>BOARD,<br>    Appellee. | ) ) ) ) ) ) ) ) ) ) | C.A. N16A-07-004 AML |

Submitted: August 4, 2017
Decided: October 13, 2017

## ORDER

**On Appellant's Appeal from the Merit Employee Relations Board: DENIED**

1.     This is an appeal from the Merit Employee Relations Board's ("the Board") decision concerning Petitioner's termination under Merit Rule 12.1 for violation of the state code of conduct and IT policies. The appeal presents two primary issues: (i) whether the Board had substantial evidence to find Patterson violated the state code of conduct and IT policies when her employee ID and password were used in connection with a scheme to defraud DMS of over $13,000 in unauthorized overtime pay; and (ii) whether DMS had just cause for terminating Patterson's employment under Merit Rule 12.1 when DMS found she violated said policies.

1

## Factual Background

2. Appellant Krystal Patterson was an accounting specialist with the Division of Management Services ("DMS") until she was terminated on September 4, 2015. As an accounting specialist, Patterson entered timekeeping and payroll records for the Department's employees into the Payroll/Human Resources Statewide Technology ("PHRST") system. Her termination followed an investigation into apparent fraudulent authorization of overtime pay for two of Patterson's coworkers.

3. At DMS, employee overtime first is authorized by an accounting specialist and then is entered into PHRST through a "special exceptions" report. Each accounting specialist entering the special report has to sign it with their initials. Then, a different accounting specialist conducting a quality assurance review signs their initials on the same day, or by Wednesday of the same week. Accounting specialists cannot enter their own overtime.

4. On June 18, 2015, Patterson's supervisor, a Fiscal Administrative Officer, emailed DMS Controller Morton, relaying that Patterson complained the overtime policy was not being enforced fairly. Patterson and another accounting specialist, Mandi Rosado, were denied authorization for overtime because they did not have the necessary documentation. Before complaining to the supervisor,

Patterson entered Rosado's payroll information without overtime and it was checked by quality control.

5. Later, Patterson went into PHRST's system to discover Rosado was paid overtime without the authorization. Patterson then told quality control that she believed Rosado's payroll records were changed after it was approved by quality control. Controller Morton confirmed later that Rosado received an additional $293.63 in unauthorized overtime during that pay period.

6. Suspicious of these entries, Morton discovered that Christie Kahn, another accounting specialist, received up to $1,100 of unauthorized overtime during the same period. The only and last modifications made to Rosado's and Kahn's timekeeping records were made through Patterson's electronic signature. Morton then launched a full investigation of the DMS payroll for FY 2014 & 2015.

7. That investigation revealed Kahn alone received $13,000 in unauthorized overtime payments. The unauthorized overtime payments to Kahn and Rosado were made under Patterson's electronic signature for almost eight months, although there was no record Patterson received unauthorized overtime or other financial gain. Patterson testified that she never gave her password to anyone, never wrote it down, and changed it according to IT policies.

8. Many of the key issues in the investigation centered around the PHRST security system. The passwords each accounting specialist uses to enter

overtime into PHRST are changed every 90 days. Anyone attempting to sign in has three attempts before they are locked out by the system. This was designed to prevent unauthorized users from guessing passwords. The PHRST system cannot, however, identify which computer is used to sign into the system.

9. Morton's investigation revealed Patterson's desk had sticky notes with what appeared to be passwords on them. Patterson testified that these passwords were for other email accounts. One note, however, read "Phrst" with "Jaelyn26" underneath. Patterson could not explain why "Phrst" was on that sticky note or what it meant. When asked what her last PHRST password was, Patterson testified it was Jaelyn08. Jaelyn is the name of Patterson's daughter; the numbers associated with Jaelyn's date of birth all were used for various passwords posted at Patterson's desk. In addition to numerals, PHRST passwords require a special character. Patterson testified that she "[thought] you have to use a dollar sign" as the special character. Patterson's desk contained at least one password that included a dollar sign.

10. Based on these findings, DMS recommended Patterson's termination. DMS sent Patterson a letter advising her of her right to file a grievance and participate in a pre-termination hearing. The letter stated the investigation revealed unauthorized overtime for Rosado and Kahn which "violated the public trust and

4

reflected unfavorably on the State."[1]  The letter also cited three bases for Patterson's termination:

Violation of State Code of Conduct:

Each state employee, state officer and honorary state official shall endeavor to pursue a course of conduct which will not raise suspicion among the public that such state employee, state officer or honorary state official is engaging in acts which are in violation of the public trust and which will not reflect unfavorably upon the State and its government.[2]

Violation of DHSS Policy Memorandum #3, Appropriate Use of DHSS Information Technology:

It is expected that users will conduct the State of Delaware Business with integrity, respect [sic] and prudent judgment while upholding the state's commitment to the highest standard of conduct.[3]

Violation of the Department of Technology and Information's Acceptable Use Policy:

All staff is personally responsible for information security. The roles and responsibilities of staff is defined in local policies and procedures and incorporated into the staff orientation process. All staff has the following responsibility: Compliance with the State of Delaware Information Security policies, procedures and standards established to maintain the confidentiality, integrity and availability of State information and data assets; Actions associated with assigned accounts, equipment, and removable media; Protecting the secrecy of their passwords.[4]

11.    The DHSS cabinet secretary agreed with DMS management and found that Patterson either entered the unauthorized overtime for Rosado and

---

[1] Board Op. 5.
[2] 29 *Del. C.* § 5806(a).
[3] Policy Memorandum #3, STATE OF DELAWARE DHSS (Oct. 17, 2014),
http://www.dhss.delaware.gov/dhss/admin/files/pm3.pdf.
[4] DTI Information Security Policy page 11,
https://dti.delaware.gov/pdfs/pp/DelawareInformationSecurityPolicy.pdf.

Kahn, or recklessly compromised her password and ID, facilitating her coworker's fraudulent scheme to steal from the state. Patterson filed a timely appeal with the Board. After hearing the appeal, the Board unanimously found Patterson violated the State Code of Conduct and the IT Policy, but was unable to reach a decision regarding the appropriateness of the termination. Because the Board was split 2-2 on whether to grant or deny the grievance, the DMS decision to terminate remained in effect. On July 5, 2016, Patterson perfected her appeal to this Court.

12. Patterson argues DMS lacked substantial evidence to find Patterson violated the Code of Conduct and IT Policies because alternative explanations for the entries were possible and the Board incorrectly interpreted Patterson's testimony regarding her passwords. Patterson also contends the Board erred in upholding DMS's decision because DMS did not have just cause to terminate Patterson under Merit Rule 12.1. Specifically, Patterson argues again that DMS lacked evidence to support a finding that she violated the Code of Conduct and IT Policy. In Response, the Board argues its decision regarding the violations was supported by substantial evidence and DMS had just cause for termination when Patterson left sensitive password information on her desk in violation of IT policies. The Board contends this information was used to defraud the state in violation of the code of conduct.

**Analysis**

13.     An appellate court's review of a Board decision is limited. The Court merely determines whether the decision was supported by substantial evidence and free of legal error.[5] Upon review of an administrative agency's findings, the Court "will not substitute its judgment for that of an administrative body where there is substantial evidence to support the decision and subordinate findings of the agency."[6]

14.     "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.' It is more than a scintilla, but less than a preponderance of the evidence. It is a low standard to affirm and a high standard to overturn. If the record contains substantial evidence, then the Court is prohibited from reweighing the evidence or substituting its judgment for that of the agency."[7] When reviewing the Board's conclusions of law, the Court's review is *de novo*.[8]

15.     A discharge recommendation is presumed correct. The appellant bears the burden to present evidence sufficient to rebut the presumption and to convince the Board that termination was without just cause.[9]

16.     Merit Rule 12.1 provides:

> Employees shall be held accountable for their conduct.
> Disciplinary measures up to and including dismissal shall

---

[5] *Ward v. Dep't of Elections*, 2009 WL 2244413, at *1 (Del. July 22, 2009).
[6] *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981).
[7] *Hanson v. Delaware State Public Integrity Com'n*, 2012 WL 3860732, at *7 (Del. Super. Aug. 30, 2012).
[8] *Ward*, 2009 WL 2244413, at *1.
[9] *Hopson v. McGinnes*, 391 A.2d 187, 188 (Del. Super. Ct. 1978).

> be taken only for just cause. 'Just cause' means that management has sufficient reasons for imposing accountability. Just cause requires: showing that the employee has committed the charged offense; offering specified due process rights specified in this chapter; and imposing a penalty appropriate to the circumstances.[10]

Patterson concedes the Board provided the specified due process rights. She only argues that there was insufficient evidence showing she committed the offense and that termination was an inappropriate penalty under these circumstances. The Board found Patterson violated the Department of Technology and Information's Acceptable Use Policy (the "Acceptable Use Policy") and the State Employee Code of Conduct (the "Code of Conduct").

17. The department's Acceptable Use Policy specifically provides that all staff have the responsibility of protecting the secrecy of their passwords. It is evident that Patterson's ID and password were used to enter unauthorized overtime for Kahn and Rosado. Morton's investigation revealed Patterson's desk displayed several sticky notes with elements used in Patterson's PHRST passwords, including the numbers in her daughter's birthday.

18. Additionally, one sticky note inexplicably had "Phrst" written on it with a portion of Patterson's most recent password written underneath. Based on this evidence, a reasonable mind could accept the conclusion that Patterson's coworkers could have combined the information displayed on Patterson's desk to

---

[10] State Merit Rules, Chapter 12, http://www.delawarepersonnel.com/mrules/chapter-12.shtml.

guess her PHRST password. This constitutes substantial evidence of a violation of the department's acceptable use policy and therefore just cause for disciplinary measures under Merit Rule 12.1.

19. The Code of Conduct provides that each employee shall endeavor to conduct themselves in such a way as to not raise public suspicion that such employee is engaging in acts that violate the public trust or will reflect unfavorably upon the state. Assuming, at the very least, that Patterson failed to maintain the secrecy of her password, the Board reasonably could conclude that she violated the public trust and her actions reflected unfavorably on the state. As an accounting specialist, Patterson was responsible for entering payroll, overtime, and other functions affecting the state's resources. The fraudulent scheme facilitated by the use of Patterson's ID and password enabled Kahn alone to receive $13,000 in unauthorized overtime. The success of such schemes reflects unfavorably on the state and can erode public trust in the integrity of state agencies. Consequently, there was substantial evidence to support the Board's findings that Patterson violated the code of conduct.

20. Patterson argues that her termination is not supported by just cause because the measure was inappropriate under the circumstances. Patterson points to the Board's 2-to-2 tie vote regarding the appropriateness of her termination. The

Board found that Patterson did not benefit from her coworker's scheme and that she was the one to bring it to DMS's attention.

21. The Supreme Court has held that when the administrative board is split, "the [Superior] Court may remand for further consideration by the [board] or it may make its own findings based upon the record made before the [board]."[11] In the interest of judicial efficiency, this Court will make its own findings based on the record made before the Board.

22. Patterson has not carried her burden to present evidence sufficient to disturb DMS's decision. At this stage, Patterson must present more than alternative exculpatory theories or alleged misinterpretation of her testimony. Patterson presented no evidence for how Kahn and Rosado obtained her password. Considering the three-attempt sign-in limitation, it seems impossible that her coworkers were able to access her PHRST account without her giving the password to them or leaving it carelessly on her desk. DMS is accountable to the citizens of this state and has the responsibility of ensuring its office is run without the appearance of embezzlement. Consequently, I hold Patterson's discharge was appropriate.

---

[11] *Hopson v. McGinnes*, 391 A.2d 187, 189 (Del. 1978).

For the foregoing reasons, the decision of DMS is **AFFIRMED. IT IS SO ORDERED**.

Abigail M. LeGrow, Judge

Original to Prothonotary