**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| JACK MILLIGAN, D.O. | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. K22A-12-001 RLG |
| | ) | |
| DELAWARE BOARD OF MEDICAL | ) | |
| LICENSURE & DISCIPLINE, | ) | |
| | ) | |
| Appellee. | ) | |

**Submitted:** September 8, 2023
**Decided:** December 20, 2023

## ORDER

*Upon Appeal from the Delaware Board of Medical Licensure & Discipline –*
**AFFIRMED.**

James E. Liguori, Esquire, Liguori & Morris, Dover, Delaware. *Attorney for Appellant.*

Kemba Lydia-Moore, Esquire, Deputy Attorney General, Dover, Delaware. *Attorney for Appellee.*

**GREEN-STREETT, J.**

1

Dr. Jack Milligan appeals a final order of the Board of Medical Licensure and Discipline for the State of Delaware (the "Board"). The Board found that Dr. Milligan violated several state statutes and board regulations, and that he engaged in sexual misconduct with a patient.[1] The Board's Order suspended Dr. Milligan's medical license for two years, and imposed other penalties the Board deemed appropriate.[2] Dr. Milligan's appeal argues that the Board violated his right to due process because the Chief Hearing Officer allowed the presentation of evidence regarding an alleged incident that occurred over 20 years ago.[3] The Court finds that the Board's Order did not give weight to the dated incident; is supported by substantial evidence; and lacks legal error. Therefore, the Board's Order is **AFFIRMED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Dr. Milligan earned his Delaware medical license on February 25, 2000.[4] Over the course of his licensure, his practice largely focused on internal medicine

---

[1] Delaware Board of Medical Licensure and Discipline Final Order (the "Order") at 12 (Dec. 5, 2022).

[2] Id. at 13-15.

[3] Appellant's Opening Br. at 24-28.

[4] Id. at 1.

and addiction treatment.[5] Patient G.B. purportedly treated with Dr. Milligan from May 2000 until October 2000.[6] G.B. alleges that Dr. Milligan behaved inappropriately toward her at an office visit that occurred on or about October 5, 2000.[7] She contends that, at the end of her visit, Dr. Milligan exposed himself to her before grabbing her and forcing her hand in the direction of his penis.[8] G.B. resisted Dr. Milligan, told him "no," and pulled away.[9] Dr. Milligan advanced upon G.B. again, at which time she immediately left his office to report the incident.[10]

G.B. does not recall why she originally went to visit Dr. Milligan or where she reported the incident.[11] G.B. never returned to Dr. Milligan's office after October 2000.[12] Dr. Milligan does not recall ever treating G.B., and maintains that he has no record of her visiting his office at any time.[13]

---

[5] Id.

[6] App. to Appellant's Opening Br. at A17.

[7] Id.

[8] Id. at A25.

[9] Id.

[10] Id.

[11] Id. at A25-26.

[12] Id. at A25.

[13] Id. at A38.

Patient S.C. first visited Dr. Milligan's office as a patient sometime in 2007.[14] She began treating with Dr. Milligan for fatigue and pain. Dr. Milligan prescribed her several medications to treat her symptoms.[15] She described her first few visits with Dr. Milligan as routine.[16] After her third visit, Dr. Milligan asked S.C. to come by his medical office after hours to "discuss divorce."[17] S.C. went to Dr. Milligan's office as requested.[18] S.C. testified that, at the end of their discussion, Dr. Milligan "slammed" her against a wall, attempted to kiss her, put his hand inside of her bra, and pushed against her.[19] S.C. pushed him away, at which time Dr. Milligan apologized.[20] S.C. accepted Dr. Milligan's apology, and again visited his office after hours.[21] At S.C.'s next after-hours visit, sex occurred between S.C. and Dr. Milligan.[22]

---

[14] Id. at A27.

[15] Id.

[16] Id. at A28.

[17] Id.

[18] Id.

[19] Id.

[20] Id. at A28-29.

[21] Id. at A 29-30.

[22] Id. at A30 (Although both S.C. and Dr. Milligan agree that they engaged in a consensual sexual relationship thereafter, they disagree about the nature of their initial sexual encounter. S.C. testified that Dr. Milligan sexually assaulted her. Dr. Milligan maintains that the sexual relationship was consensual at its commencement.); see also A40.

S.C. continued to visit Dr. Milligan after hours. At each visit, S.C. and Dr. Milligan engaged in sexual activity before Dr. Milligan would write her prescriptions.[23] This relationship intermittently continued from 2007 until 2015.[24] During that time, S.C. and Dr. Milligan also exchanged sexually explicit text messages.[25] S.C.'s sexual relationship with Dr. Milligan ended in 2015 after a series of surgeries left her in a "bad physical way."[26] S.C. attempted to get a prescription from Dr. Milligan again in 2018, but Dr. Milligan refused because S.C. was unable to visit his office.[27]

Dr. Milligan does not dispute that he engaged in a consensual sexual relationship with S.C. from 2007 until 2015.[28] He also admitted to prescribing her narcotics, including painkillers, without proper documentation.[29] He agreed he did not follow proper procedure when writing prescriptions for S.C.[30] Dr. Milligan

---

[23] Id. at A31.

[24] Id.

[25] Id.

[26] Id. at A32.

[27] Id.

[28] Id. at A40.

[29] Id.

[30] Id.

further agreed he did not properly consult S.C.'s medical charts before writing her prescriptions.[31] S.C. reported the incidents with Dr. Milligan to the Dover Police Department in January 2021.[32]

## B.  Procedural Background

The State filed a complaint (the "Complaint") against Dr. Milligan on October 19, 2021.[33] The Complaint focused on Dr. Milligan's treatment of two patients, S.C. and G.B.[34] The State filed an amended complaint (the "Amended Complaint") on May 26, 2022.[35] The Amended Complaint retracted several allegations made in the original Complaint, but otherwise contained the same information.[36]

Before the matter went to a hearing, Dr. Milligan made several applications with regard to G.B.  First, Dr. Milligan wished to depose G.B.  Alternatively, Dr. Milligan posited that any allegations related to G.B. should be barred by the doctrine of laches.[37] G.B.'s allegations against Dr. Milligan stemmed from a single visit to

---

[31] Id. at A41-42.

[32] Id. at A33.

[33] App. to Appellant's Opening Br. at A10.

[34] Id. at A7-8.

[35] Id. at A19.

[36] Id. at A16-19.

[37] Appellee's Answering Br. at 3-4.

Dr. Milligan's office that occurred 20 years prior to the filing of the Amended Complaint.[38]  Dr. Milligan argued that too much time had passed for him to have full access to any documentation of the incident.[39]  He contended that, because the State was aware of G.B.'s allegations shortly after the alleged incident occurred, the doctrine of laches should bar G.B.'s allegations.[40]  The Hearing Officer denied both of Dr. Milligan's requests.[41]

The Hearing Officer conducted a hearing regarding the Amended Complaint against Dr. Milligan on May 25, 2022.[42]  Dr. Milligan again requested that any allegations related to G.B. be dismissed.[43]  The Hearing Officer declined to dismiss any of the allegations related to G.B.[44]  The Hearing Officer determined the allegations made by both patients were credible, and found that Dr. Milligan violated several regulations regarding professional conduct.[45]

---

[38] Appellant's Opening Br. at 9.

[39] Id.

[40] Id. at 25.

[41] Id.

[42] Id. at 5.

[43] Id.

[44] Id. at 6.

[45] App. to Appellant's Opening Br. at A78-83.

The Hearing Officer issued a recommendation to the Board on July 6, 2022.[46] That recommendation included findings of fact, conclusions of law, and proposals for discipline.[47] The Hearing Officer concluded that Dr. Milligan committed violations regarding both patient G.B. and patient S.C.[48] The Hearing Officer recommended Dr. Milligan's license be suspended for one year; that he complete 18 hours of continuing medical education; that, upon reinstatement of his medical license, a probationary period of three years be imposed; that he only be permitted to treat female patients in the presence of a third party; and that a $5,000 fine be levied.[49]

On November 1, 2022, the parties presented oral argument before the Board.[50] On December 5, 2022, the Board issued its Order, which it based solely on the allegations of patient S.C.[51] The Board expressly stated that the allegations regarding patient G.B. did not factor into its deliberation or decision.[52] The Board

---

[46] See App. to Appellant's Opening Br. at A20-85.

[47] Appellee's Answering Br. at 6.

[48] App. to Appellant's Opening Br. at A57-70.

[49] Id. at A84-85.

[50] Appellee's Answering Br. at 7.

[51] Appellant's Ex. 1 at 8.

[52] Id.

declined to adopt the Hearing Officer's recommended discipline, and instead imposed more severe sanctions.[53] Those sanctions included a two-year suspension of Dr. Milligan's license, as well as other terms and conditions for his potential reinstatement.[54] Dr. Milligan filed his appeal to the Board's Order on December 8, 2022.[55] Dr. Milligan also filed a Motion to Stay the Final Order of the Board of Medical Licensure and Discipline, which this Court denied.[56]

## II.    STANDARD OF REVIEW

29 Del. C. § 10142 governs this Court's review of the Board's decision. "Any party against whom a case decision has been decided may appeal such decision to the [Superior] Court."[57] The Court reviews the record and determines if the Board's decision "was supported by substantial evidence on the record" and free from legal error.[58] "Unless the [B]oard erred as a matter of law, did not support its decision by substantial evidence, or abused its discretion, the Court will uphold the [B]oard's

---

[53] Id. at 13.

[54] Id. at 13-14.

[55] Appellant's Opening Br. at 3.

[56] Milligan v. Delaware Bd. of Med. Licensure & Discipline, 2023 WL 3726637, at *2 (Del. Super. May 26, 2023).

[57] 29 Del. C. § 10142(a).

[58] 29 Del. C. § 10142(d).

decision."[59] "Substantial evidence is evidence that would lead a reasonable mind to support a conclusion."[60] "The Court is not the trier of fact and does not have the authority to weigh the evidence or make its own factual findings."[61] This Court reviews "the Board's decision, not the Hearing Officer's recommendation."[62] The Court reviews questions of law *de novo*.[63]

## III. DISCUSSION

Dr. Milligan's appeal to this Court almost exclusively focuses on the fact-finding and legal shortcomings of the Hearing Officer. The Delaware Supreme Court has held that "the challenged findings of [a] Hearing Officer do not provide [an appellant] a basis for relief."[64] While the Board may be bound by a Hearing Officer's findings of fact, the Board retains "the discretion to consider a party's exceptions as to conclusions of law and recommended penalties."[65] The Board

---

[59] Cooper v. Delaware Bd. of Nursing, 2021 WL 754306, at *3 (Del. Super. Feb. 26, 2021), aff'd, 264 A.3d 214 (Del. 2021) (citing Eckeard v. NPC Int'l, Inc., 2012 WL 5355628, at *2 (Del. Super. Oct. 17, 2012)).

[60] Id. (citing Olney v. Cooch, 425 A.2d 610, 614 (Del. 1981)).

[61] Villabona v. Bd. of Med. Prac. of State, at *2–3 (Del. Super. Apr. 28, 2004), aff'd, 858 A.2d 961 (Del. 2004) (citing Johnson v. Chrysler Corp., 213 A.2d 64, 66 (1965)).

[62] Bilski v. Bd. of Med. Licensure & Discipline of State, 2014 WL 3032703, at *7 (Del. Super. June 30, 2014), aff'd, 115 A.3d 1214 (Del. 2015).

[63] Villabona, 2004 WL 2827918, at *2.

[64] Gala v. Bullock, 250 A.3d 52, 66 (Del. 2021).

[65] Id.

10

unequivocally and expressly chose to disregard any portion of the Hearing Officer's recommendation that dealt with G.B. With that express disavowal, the Board cured any legal error. Consequently, Dr. Milligan presents no reviewable arguments on appeal.

Dr. Milligan first argues that the Hearing Officer committed legal error by refusing to apply the doctrine of laches to bar any of patient G.B.'s allegations.[66] The Board explicitly stated, however, that those allegations did not factor into its decision.[67] By refusing to adopt any recommendation made by the Hearing Officer regarding patient G.B., the Board "cured any legal error resulting therefrom."[68] This Court must limit its review to the Board's Order, and not any recommendation made by the Hearing Officer which the Board rejected.[69] Because Dr. Milligan's first argument on appeal centers around an issue that only pertains to the Hearing Officer's recommendation, and not the Board's Order, this Court will not consider Dr. Milligan's first argument.

---

[66] Appellant's Opening Br. at 24-25.

[67] Appellant's Ex. 1 at 8 ("The 22 year old allegations as to Patient D.B. [sic] did not factor into deliberations and did not form a basis for the Board's decision.").

[68] Gala, 250 A.3d at 66.

[69] Bilski, 2014 WL 3032703, at *7.

11

Dr. Milligan next argues that the Hearing Officer's inclusion of patient G.B.'s allegations in the record deprived Dr. Milligan of due process.[70] Dr. Milligan contends that these allegations impermissibly "tainted the entire proceeding."[71] Dr. Milligan submits that the Board's decision to disregard the allegations pertaining to patient G.B. "demonstrates that these allegations were simply unreliable, and should not have been considered by the Chief Hearing Officer."[72] Again, Dr. Milligan's appeal must be limited to the Board's Order, not the conduct or decision making of the Hearing Officer.[73]

Dr. Milligan posits that, by merely allowing the Board to consider patient G.B.'s allegations, the Hearing Officer created an incurable violation of due process.[74] Dr. Milligan compares the Board to a jury, and argues that allowing the Board to consider G.B.'s "unreliable, decades-old allegations tainted the entire proceeding[,] and amounted to a denial of due process."[75] Dr. Milligan asserts that the Board was unable to disregard the Hearing Officer's findings of fact and consider

---

[70] Appellant's Opening Br. at 29.

[71] Id.

[72] Id. at 30.

[73] See Bilski, 2014 WL 3032703, at *7.

[74] Appellant's Opening Br. at 29.

[75] Id.

12

S.C.'s allegations without the inherent bias created by the inclusion of G.B.'s allegations.[76] Yet, unlike the metaphorical jury alluded to in Dr. Milligan's written submission, the Board can cure errors made by the Hearing Officer by declining to adopt the Hearing Officer's recommendations.[77] By explicitly disregarding G.B.'s allegations, the Board cured any error made by the Hearing Officer related to G.B.'s allegations.[78]

In his appeal, Dr. Milligan does not dispute any part of the Board's Order related to the allegations of patient S.C. The Board based its findings and Order entirely on those allegations.[79] Because Dr. Milligan does not dispute the actual basis of the Board's Order, the Order must be affirmed if the Board relied on substantial evidence and the Court finds the Order free from legal error.[80] As no argument or appeal was proffered with regard to the substantive basis of the Board's decision, the Court finds the Order is supported by substantial evidence and free from legal error.

---

[76] Id.

[77] Gala, 250 A.3d at 66.

[78] Bilski, 2014 WL 3032703, at *7.

[79] Appellant's Ex. 1 at 8.

[80] Bilski, 2014 WL 3032703, at *7.

## IV.    CONCLUSION

Accordingly, the Board's Order must be upheld.  Dr. Milligan almost exclusively contests decisions made by the Hearing Officer in this matter.  The Board expressly rejected much of the Hearing Officer's recommendation. The Hearing Officer's decision falls outside this Court's scope of review on appeal.  The Board's Order is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge